STATE OF NORTH CAROLINA v. ROBERT LEE HOOD

No. 15A92

(Filed 19 November 1992)

1. **Criminal Law § 884 (NCI4th)— failure to instruct on alibi— request at charge conference—appellate review**

    Although defendant's counsel did not object to the charge when it was given, his earlier request for an alibi instruction at the charge conference was sufficient under Appellate Rule 10(b)(2) to warrant full review on appeal of the court's failure to instruct on alibi.

    **Am Jur 2d, Appeal and Error § 623; Trial §§ 1082, 1261.**

2. **Criminal Law § 777 (NCI4th)— alibi evidence—failure to give requested instruction**

The trial court erred in failing to give an alibi instruction as requested by defendant in a prosecution for first degree murder and felonious assault where defendant presented evidence that he was in Charlotte at the time the crimes were committed in Asheville.

Am Jur 2d, Trial §§ 1093, 1231, 1261.

Duty of court, in absence of specific request, to instruct on subject of alibi. 72 ALR3d 547.

3. **Criminal Law § 778 (NCI4th)— failure to instruct on alibi— burden of proving prejudice**

The trial court's failure to instruct on alibi did not reduce the State's burden of proving, beyond a reasonable doubt, every element of the crimes charged and thus did not violate defendant's due process rights. Therefore, the harmless error standard of N.C.G.S. § 15A-1443(a) applies, and defendant bears the burden of showing a reasonable possibility that, absent the error, a different result would have been reached at trial.

Am Jur 2d, Appeal and Error § 810; Trial § 1266.

4. **Criminal Law § 778 (NCI4th)— failure to instruct on alibi— harmless error**

Defendant was not prejudiced by the trial court's erroneous failure to instruct on alibi in a first degree murder and felonious assault prosecution where the trial court's instructions made it clear that the burden was on the State to prove every element of the crimes charged beyond a reasonable doubt, the jury was not led to believe that defendant had to prove anything in order to be found not guilty, and the court's charge thus afforded defendant the same benefits a formal charge on alibi would have afforded.

Am Jur 2d, Appeal and Error § 810; Trial § 1266.

5. **Indigent Persons § 19 (NCI4th)— denial of court-appointed psychiatrist**

The trial court did not err in the denial of an indigent defendant's request for a court-appointed psychiatrist to assist him in his trial for first degree murder and felonious assault where defendant submitted an affidavit of his counsel and

a copy of a psychiatric report submitted upon defendant's discharge from Dorothea Dix Hospital following a court-ordered competency evaluation; defense counsel's affidavit merely reiterated information contained in the psychiatric report; the report failed to show that defendant's sanity at the time of the offenses would be a factor at trial but provided affirmative evidence that defendant's mental state at the time of the offenses would not be a factor; and defendant did not otherwise make a showing of a particularized need for the assistance of a psychiatric expert.

**Am Jur 2d, Criminal Law § 1006.**

**Right of federal indigent criminal defendant to obtain independent psychiatric examination pursuant to subsection (e) of Criminal Justice Act of 1964, as amended (18 USCS § 3006A(e) ). 40 ALR Fed 707.**

6. **Homicide § 244 (NCI4th) — first degree murder — sufficient evidence of premeditation and deliberation**

There was substantial evidence from which the jury could find that defendant killed the victim with premeditation and deliberation so as to support his conviction of first degree murder where the evidence tended to show that the victim had lived with defendant, had left him sometime during the month before the killing, and told him on the day of the murder that she no longer wanted to see him; defendant had ample time to premeditate and deliberate as he walked from the victim's house to his truck, returned to the house to tell the victim that it would not start, again went outside as a friend of the victim attempted to start her car, returned to the house, and went into the kitchen, ostensibly to get a drink of water; when he emerged from the kitchen, defendant fired at least six shots at the victim and her friend, then refused their requests that he help them and told them they had gotten what they deserved; and following the shootings defendant disappeared for over eight years before he was apprehended in New York.

**Am Jur 2d, Homicide § 439.**

7. **Criminal Law § 1242 (NCI4th) — extenuating relationship with murder victim — not mitigating factor for assault of second victim**

The trial court did not err by failing to find as a mitigating factor for assault with a deadly weapon with intent to kill

STATE v. HOOD

[332 N.C. 611 (1992)]

inflicting serious injury that the relationship between defendant and the victim was extenuating or that defendant acted under strong provocation based on evidence of his relationship with a murder victim shot by defendant at the same time he shot the assault victim where the only evidence of defendant's relationship with the assault victim was that the victim had worked for him and that she knew him because he had been seeing the murder victim, and there was no evidence that the assault victim provoked defendant in any manner before he shot her. N.C.G.S. § 15A-1340.4(a)(2)(i).

**Am Jur 2d, Assault and Battery § 61.**

**Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18. ALR4th 961.**

Appeal as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing a life sentence for first-degree murder and a consecutive twenty-year sentence for assault with a deadly weapon with intent to kill inflicting serious injury, entered by Downs, J., on 17 May 1991 in Superior Court, Buncombe County. Heard in the Supreme Court on 8 September 1992.

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The State's evidence tended to show that the following events occurred in this case. In August 1981, the defendant lived with Teresa Breedlove, the murder victim, in Charlotte. In September 1981, Breedlove moved to Asheville and moved in with her sister, Kathy Merrill, and her brother-in-law. Breedlove's mother, Dixie Cagle, also lived in Asheville.

On 6 September 1981, Breedlove and Sheila Ann McCall, a lifelong friend, ate breakfast at Cagle's home. After eating breakfast, Breedlove and McCall returned to the Merrill home at about 2 p.m. Breedlove later received a call from the defendant, Robert Lee Hood, who told her he was in Charlotte although he arrived

STATE v. HOOD

[332 N.C. 611 (1992)]

at the Merrills' house about 15 minutes after the phone call. Hood said that he wanted to talk to Breedlove alone, and the two went into another room for a few minutes. Hood and Breedlove argued, and Breedlove asked him to leave.

The defendant went outside to leave but then came back into the house saying that his truck would not start. Breedlove and McCall went outside and tried to start McCall's car, which also would not start. The three of them then went back inside the house, and the defendant asked for a drink of water. Breedlove told him to get it for himself.

The defendant went into the kitchen and came out a few moments later firing a gun. His shots hit both Breedlove and McCall. When the two women asked the defendant for help, he refused and told them that they had gotten what they deserved.

McCall called the police at 4:47 p.m., stating that she had been shot by Robert Hood. When the police arrived at the scene, McCall again told them that Hood had shot her and Breedlove. Police showed McCall pictures of Hood found in Breedlove's purse, and McCall again identified Hood as the person who had shot her and Breedlove. McCall also identified the defendant in the courtroom as the person who had shot her and Breedlove. Another witness, Carl Roberts, told Officer Lee Warren that he had heard some shots and had seen a black male leaving the Merrill house in a blue and white truck.

As a result of the shooting, Breedlove was killed, and McCall was hospitalized for 45 days with bullet wounds in her side. Officer Lee Warren attended the autopsy and took possession of a .38 caliber slug that had been removed from Breedlove's body. He testified that a .38 caliber slug can be fired from a .357 magnum handgun.

Officers attempted to serve arrest warrants for Robert Lee Hood at the home of his father, Hartford Hood. Although Robert Hood was not there, the officers searched the premises and found a .357 magnum pistol and six unspent .357 cartridges under the bed. A car found outside the residence was registered to Robert Lee Hood.

Witnesses for the defense testified to the effect that the defendant was not in Asheville at the time of the murder and assault. The defendant's sister, Mary Frances Lowery, testified that she

had last seen defendant on 6 September 1981 at about 6:30 p.m. and that, prior to 6:30 p.m., she had seen him from time to time throughout the day in Charlotte. She testified that the defendant did not live at his father's house. She also testified that Robert Hood's father, Hartford Hood, drove a blue and white pickup truck and that the defendant sometimes drove the truck.

The defendant's nephew, Jerome Lowery, testified that he had seen the defendant several times in Charlotte on 6 September 1981 and had last seen the defendant at about 2:30 p.m. on that day. He also testified that the defendant owned a .38 caliber Smith and Wesson and that he had seen the defendant carry the gun in the past.

Law enforcement authorities were unable to locate the defendant for more than eight years after the crimes at issue were committed. The defendant finally was apprehended in New York in the spring of 1990 and was extradited to North Carolina.

The defendant raises four issues on appeal to this Court. First, the defendant argues that the trial court erred by refusing to instruct the jury on the defense of alibi. Second, he argues that the trial court erred in denying his request for a court-appointed mental health expert. Third, the defendant asserts that the trial court erred in denying his motions to dismiss the first-degree murder charge at the close of the State's evidence and at the close of all the evidence. Finally, the defendant asserts that the trial court erred, when sentencing him on the assault conviction, by failing to find as a mitigating factor either that the relationship between the defendant and the victim was an extenuating circumstance or that the defendant acted under strong provocation.

I.

The defendant assigns as error the trial court's failure to instruct the jury on the defense of alibi after the trial judge indicated at the charge conference that he would be willing to instruct on alibi and the defendant's counsel responded that he did want such an instruction. While the trial court did err in failing to instruct the jury on alibi in this case, we conclude that this error was harmless.

[1]  At the jury charge conference in the present case, when the trial court indicated that it would be willing to instruct on the defense of alibi, counsel for the defendant immediately responded

that he did want such an instruction. Although the defendant's counsel did not object to the jury charge when it was given, his earlier request for the alibi instruction at the charge conference was sufficient under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure to warrant this Court's full review on appeal. *State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988); *State v. Pakulski*, 319 N.C. 562, 575, 356 S.E.2d 319, 327 (1987).

[2] If the defendant requests an alibi instruction and evidence has been introduced tending to show that the accused was at some other specified place at the time the crime was committed, the trial court must instruct the jury on alibi. *State v. Waddell*, 289 N.C. 19, 33, 220 S.E.2d 293, 303 (1975), *vacated in part*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976). In the present case, the defendant introduced testimony which tended to show that he was in Charlotte—not in Asheville—at the time the crimes were committed on 6 September 1981. This evidence was sufficient to entitle the defendant to an alibi instruction if he so requested. *See State v. Hunt*, 283 N.C. 617, 197 S.E.2d 513 (1973) (defendant's evidence, including his own testimony and testimony of other witnesses which tended to show he was elsewhere at the time of the crime, was sufficient to require an alibi instruction). The trial court's failure to instruct the jury on the defense of alibi after the defendant requested such an instruction in this case was error.

[3] The defendant argues that the State bears the burden under N.C.G.S. § 15A-1443(b) of proving that this error was harmless beyond a reasonable doubt because the trial court's failure to instruct the jury on alibi reduced the State's constitutionally required burden of proving every element of the crimes charged beyond a reasonable doubt and, thereby, denied him due process. We disagree. Under the circumstances presented in this case, the trial court's failure to instruct on alibi did not reduce the State's burden of proving, beyond a reasonable doubt, every element of the crimes charged. Because the trial court's instructions did not violate the defendant's due process rights as set forth in *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368 (1970), the harmless error standard of N.C.G.S. § 15A-1443(a) applies. The defendant in the present case bears the burden of showing a reasonable possibility that, absent the error, a different result would have been reached at trial.

[4] In the present case, the trial court instructed the jury that the defendant is presumed innocent, that he is not required to

prove his innocence, and that the State bears the burden of proving guilt beyond a reasonable doubt. The trial court instructed the jury on the essential elements of the crimes charged, telling the jury that it could not return guilty verdicts unless it found that every element had been established beyond a reasonable doubt. In its final instruction to the jury, the trial court reiterated the essential elements of the crimes and restated the State's burden of proving every element of the crimes charged beyond a reasonable doubt. The trial court made it clear that the burden was on the State to prove every element of the crimes charged beyond a reasonable doubt, and the jury was not led to believe that the defendant had to prove anything in order to be found not guilty. Because the trial court's charge afforded the defendant the same benefits a formal charge on alibi would have afforded, the defendant was not prejudiced by the trial court's error. *See State v. Shore*, 285 N.C. 328, 343, 204 S.E.2d 682, 691-92 (1974).

## II.

**[5]** The defendant next asserts that the trial court erred by denying his request for a court-appointed psychiatrist to assist in the preparation of his case and that this error violated his constitutional rights under *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985). The Supreme Court of the United States held in *Ake* that an indigent defendant is entitled to the assistance of a psychiatric expert if he makes a "threshold showing to the trial court that his sanity is likely to be a significant factor in his defense." 470 U.S. at 83-84, 84 L. Ed. 2d at 66. The defendant may make such a showing by demonstrating "to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *Id. Ake* further held that a defendant's sanity is a "significant factor" entitling him to the assistance of a psychiatric expert when the State presents evidence of the defendant's future dangerousness in a capital sentencing proceeding. *Id.* This Court has determined that *Ake* applies to both the guilt phase and the sentencing proceeding in a capital case. *State v. Robinson*, 327 N.C. 346, 354, 395 S.E.2d 402, 406-07 (1990) (citing *State v. Smith*, 320 N.C. 404, 358 S.E.2d 329 (1987)); *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986)).

In determining whether an indigent defendant has made the threshold showing required before the State must provide expert assistance, "the trial court should consider all the facts and cir-

cumstances known to it at the time the motion for psychiatric assistance is made." *State v. Robinson*, 327 N.C. at 353, 395 S.E.2d at 406 (quoting *State v. Gambrell*, 318 N.C. 249, 256, 347 S.E.2d 390, 394 (1986)). In *Robinson*, this Court found that the defendant had not made the required threshold showing where the only evidence presented by the defendant was the report filed with the trial court by the examining psychiatrist following an evaluation of the defendant's capacity to stand trial. 327 N.C. at 353, 395 S.E.2d at 406. In the report, the defendant was diagnosed as having an alcohol abuse problem and a "personality disorder, mixed with dependent, impulsive, and avoidant features." *Id.* at 352, 395 S.E.2d at 405. The psychiatrist observed that the defendant appeared in "conventional grooming" and had a "cooperative attitude." *Id.* at 351, 395 S.E.2d at 405. The defendant was found to have clear speech and to have coherent and organized thought processes. The defendant was preoccupied and concerned about his legal situation. His insight was limited, although his judgment was found to be appropriate. The defendant denied any history of mental illness, although he admitted to drinking and to occasional use of drugs. The psychiatrist found "no 'evidence of mental illness that could have impaired [defendant's] ability to recognize right from wrong' at the time the crimes were committed," expressed the opinion that the "defendant presented 'no evidence of psychosis or other severe mental illness,'" and recommended that the defendant be discharged in order to proceed to trial. *Id.* at 352, 395 S.E.2d at 405.

In support of his motion for appointment of a psychiatric expert, the defendant in the present case submitted an affidavit of his counsel and a copy of the report completed by Dr. Patricio Lara upon the defendant's discharge from Dorothea Dix Hospital following a court-ordered competency evaluation. The defendant presented no other evidence in support of his motion. Defense counsel's affidavit merely reiterated information contained in the psychiatric report, which included the following information. Dr. Lara diagnosed the defendant as having a "personality disorder with mixed paranoid and schizoid features, with evidence of some obsessive and compulsive traits." He found that the defendant's intelligence level was low average and that the defendant had a sixth-grade education. Although the defendant's thought processes were slow, Dr. Lara found that the defendant's concentration, orientation, and memory functions were normal and that his judgment and insight were fair. Dr. Lara found no evidence of delusions

or hallucinations. The defendant refused to cooperate with the examining psychiatrist, stating that his constitutional rights were being violated. He also was hostile toward his attorneys and refused to consent to the release of his military records to them. The defendant continually discussed his extradition from New York, which he believed had violated his rights. He was given no psychotropic medication during his stay at Dorothea Dix Hospital or thereafter, and Dr. Lara discharged him with the recommendation that he be returned to court to proceed to trial.

Dr. Lara found that the defendant had no history of prior psychiatric treatment other than a pretrial assessment in New York in the early 1980's. The defendant denied committing the crimes of which he was accused and denied any mental impairment at the time the alleged events occurred. He stated that he had no impairment in his ability to recall his actions around the time of the alleged offense. Dr. Lara found that he could not make an accurate determination of the defendant's mental state at the time of the offense, but that available information, including the report given by Sheila Ann McCall, included "no evidence of confusion or impairment at the time of the incident in question."

The evidence presented by the defendant in the present case does not approach the showing found sufficient by this Court in *State v. Gambrell*, 318 N.C. 249, 257-58, 347 S.E.2d 390, 394-95 (1986), or that before the Supreme Court of the United States in *Ake v. Oklahoma*, 470 U.S. 68, 86, 84 L. Ed. 2d 53, 68 (1985). Like the report offered by the defendant in *Robinson*, the report introduced by the defendant in the present case not only fails to show that the defendant's sanity at the time of the offenses would be a factor at trial, but also provides affirmative evidence that the defendant's mental state at the time of the offenses would *not* be a factor at trial. Furthermore, the defendant did not otherwise make a showing of a "particularized need" for the assistance of a psychiatric expert. Therefore, the trial court properly denied the defendant's request for the appointment of a psychiatric expert to assist in the preparation of his case.

III.

[6] The defendant next argues that the trial court erred in denying his motions to dismiss the charge of first-degree murder for insufficiency of evidence tending to show premeditation and deliberation, the only theory on which the charge of first-degree murder

was based. We have explained that "[p]remeditation means thought out beforehand for some length of time, however short, but no particular time is required for the mental process of premeditation." *State v. Williams*, 308 N.C. 47, 68, 301 S.E.2d 335, 348, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983) (citing *State v. Britt*, 285 N.C. 256, 204 S.E.2d 817 (1974)). "Deliberation" is properly described as "an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 68, 301 S.E.2d at 348-49 (citing *State v. Bush*, 307 N.C. 152, 297 S.E.2d 563 (1982); *State v. Faust*, 254 N.C. 101, 118 S.E.2d 769, *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961)). "Cool state of blood" does not mean a lack of passion and emotion; it means that a killing was executed "with a fixed design to kill," even though the defendant may have been angry or emotional at the time. *State v. Ruof*, 296 N.C. 623, 636, 252 S.E.2d 720, 728 (1979).

The appropriate standard for appellate review of motions to dismiss for insufficiency of the evidence is as follows:

"[T]he question for the court is whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime." *State v. Bates*, 309 N.C. 528, 533, 308 S.E.2d 258, 262 (1983).

[T]he trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. . . . If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988) (citations omitted). Further, "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971).

*State v. Small*, 328 N.C. 175, 180-81, 400 S.E.2d 413, 415-16 (1991), *quoted in State v. Moss*, 332 N.C. 65, 70, 418 S.E.2d 213, 216

(1992); *State v. Quick*, 329 N.C. 1, 19, 405 S.E.2d 179, 190-91 (1991). We now undertake to apply that standard in the present case.

In the present case, the defendant challenges only the sufficiency of the evidence supporting the premeditation and deliberation elements of first-degree murder. Premeditation and deliberation ordinarily cannot be proved by direct evidence, but instead must be proved by circumstantial evidence. *Williams*, 308 N.C. at 68-69, 301 S.E.2d at 349 (citing *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975)). In determining whether evidence tends to show premeditation and deliberation, the following circumstances are among those that we will consider: (1) lack of provocation by the deceased; (2) conduct and statements of the defendant before and after the killing; and (3) "ill-will or previous difficulty between the parties." *Id*. at 69, 301 S.E.2d at 349. Evidence that the defendant fired multiple shots also may raise an inference of premeditation and deliberation. *State v. Smith*, 290 N.C. 148, 164-65, 226 S.E.2d 10, 20, *cert. denied*, 429 U.S. 932, 50 L. Ed. 2d 301 (1976).

We conclude that the State presented substantial evidence that the defendant killed Teresa Breedlove with premeditation and deliberation on 6 September 1981. Taken in the light most favorable to the State, evidence presented at trial tended to show that Teresa Breedlove had lived with the defendant in Charlotte, had left him sometime during the month before the killing, and told him on the day of the murder that she no longer wanted to see him. From this evidence, the jury reasonably could infer that Teresa Breedlove did not provoke the defendant and that the defendant felt ill will toward her because she had moved out of their residence in Charlotte and had told him that she no longer wanted to see him. The evidence tended to show that the defendant had ample time to premeditate and deliberate as he walked to his truck to start it, returned to the house to tell the victims that his truck would not start, again went outside as Sheila McCall attempted to start her car, returned to the house, and went into the kitchen, ostensibly to get a drink of water. When he emerged from the kitchen, the defendant fired at least six shots at the victims, then refused their requests that he help them and told them they had gotten what they deserved. Following the shootings, the defendant disappeared for over eight years before he finally was apprehended in New York. Such evidence was substantial evidence from which a jury reasonably could find that the defendant committed the

murder of Breedlove with premeditation and deliberation. The defendant's argument is without merit.

## IV.

[7] Finally, the defendant argues that the trial court erred, when sentencing him on the assault charge, by failing to find as a mitigating factor under N.C.G.S. § 15A-1340.4(a)(2)(i) that the relationship between the defendant and the victim was an extenuating circumstance or that the defendant acted under strong provocation. The defendant argues that the evidence presented at trial regarding his relationship with Teresa Breedlove, the murder victim, entitled him to a finding and consideration of this mitigating factor. This argument is without merit.

The trial court is required to find a statutory mitigating factor under the Fair Sentencing Act only if the evidence supporting that factor is uncontradicted and there is no reason to doubt its credibility; even then, the trial court is free to determine what weight it will give such a mitigating factor in sentencing under N.C.G.S. § 15A-1340.4(a). *State v. Jones*, 309 N.C. 214, 219, 306 S.E.2d 451, 455 (1983). To show that the trial court erred in failing to find a statutory mitigating factor, the defendant bears the burden of persuading the reviewing court that the evidence is so manifestly credible and so clearly supports the mitigating factor that no reasonable inferences to the contrary can be drawn. *Id.*

The defendant was convicted of assaulting Sheila Ann McCall, not Teresa Breedlove. In the present case, the only evidence of the relationship between the assault victim, Sheila McCall, and the defendant was that she had worked for him in Charlotte and that she knew him because he had been seeing Teresa Breedlove. There was no evidence of any extenuating circumstance surrounding the relationship between the defendant and Sheila McCall. Furthermore, there was no evidence that Sheila McCall provoked the defendant in any manner before he fired a bullet into her side. The trial court did not err in failing to find the statutory mitigating factor.

For the foregoing reasons, we conclude that the defendant received a fair trial free of prejudicial error.

NO ERROR.