GEER, Judge.
Defendant Eugene Alexander Day appeals from his conviction of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. He primarily argues on appeal that he received ineffective assistance of counsel ("IAC") when (1) his attorney called an alleged co-conspirator as a witness; and (2) his attorney failed to request that the jury be instructed on identification and alibi. Because we cannot decide the merits of defendant's first IAC claim based solely on the existing record, wedismiss that claim without prejudice to the filing of a motion for appropriate relief in the superior court. As to defendant's second IAC claim, we hold that defendant has failed to demonstrate prejudice from any lapse of his counsel.
Facts
The State's evidence tended to show the following. DeShawn Hendricks testified that he and defendant talked about robbing a Citgo convenience store. According to Hendricks, the plan required that defendant and Hendricks would wait behind the convenience store while Jimmy Lee Fletcher went inside and visited Marquita Henryhand, a clerk who worked there and whom Fletcher knew. Fletcher's role was to persuade Henryhand to step out of the bulletproof booth where the cash register was located and then signal defendant and Hendricks.
At about 1:45 a.m. on 3 August 2001, Fletcher went to the convenience store where Henryhand was tending the register behind the store's locked, bullet-proof cubicle. While visiting with Henryhand, Fletcher also talked on his cellular telephone with defendant and Hendricks, who were waiting behind the store for Fletcher's signal. At some point during Fletcher's conversation with Hendricks, the two agreed that the signal would be for Fletcher to ask Henryhand for a hug.
At about 2:00 a.m., Fletcher asked Henryhand to step out ofthe cubicle to give him a hug before he left. Approximately three seconds after Henryhand exited the cubicle, defendant and Hendricks rushed into the store. Their faces were covered and they held handguns. Defendant held his gun on Fletcher while Hendricks demanded money from Henryhand. Henryhand gave Hendricks $790 and he and defendant left the store. Henryhand locked herself and Fletcher in the store and called the police to report the robbery.
After an investigation, police charged defendant, Fletcher, and Hendricks with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. At defendant's first trial in June 2002, both Hendricks and Fletcher testified. A mistrial was declared on 13 June 2002 after the jury failed to reach a unanimous verdict.
At a second trial in September 2002, Hendricks again testified for the State regarding defendant's participation in the robbery. In addition, the State presented the store's surveillance videotape of the robbery and the testimony of two witnesses identifying defendant's voice on that videotape. The State also introduced defendant's cellular telephone records, reflecting numerous calls to and from Fletcher's cellular telephone during the pertinent time frame, including eight calls of brief duration between 1:45 a.m. and 2:07 a.m.
Defendant presented three witnesses. Defendant's fathertestified that his son lived with him and was at home when the robbery occurred. Fletcher, however, corroborated fully Hendricks' testimony regarding the robbery and defendant's participation in the robbery. A third witness attacked Hendricks' credibility.
The jury found defendant guilty of both robbery with a dangerous weapon and conspiracy to commit that offense. The trial court imposed consecutive sentences of 103 months to 133 months on the robbery charge and 34 months to 50 months on the conspiracy charge.
IAC Claims
Defendant first contends his Sixth Amendment right to effective assistance of counsel was violated when his attorney called Fletcher to testify. In order to prevail on an IAC claim,
[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (emphasis omitted; quoting Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)).
Ordinarily, claims of IAC are most properly raised in a motionfor appropriate relief. Our Supreme Court has held that an IAC claim "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002). As the Supreme Court explained, "[t]his rule is consistent with the general principle that, on direct appeal, the reviewing court ordinarily limits its review to material included in `the record on appeal and the verbatim transcript of proceedings, if one is designated.'" Id., 557 S.E.2d at 524-25 (quoting N.C.R. App. P. 9(a)).
Our examination of the record reveals that defendant's first IAC claim cannot be decided without further factual development. We cannot resolve on this record what defense counsel knew regarding Fletcher's likely testimony or whether defense counsel had a purpose or strategy in presenting Fletcher's testimony. Although defendant urges us to assume that defense counsel should have known Fletcher's testimony would be adverse to defendant, the fact that Fletcher testified in the first trial, the first trial ended in a mistrial, and the State declined to call Fletcher as a witness in the second trial could suggest the opposite. Since therecord contains no indication of the nature of Fletcher's testimony in the first trial or any other evidence regarding whether defense counsel should, through other means, have known that Fletcher would testify adversely, we cannot on direct review decide the merits of this IAC claim. Factual issues exist that must be more fully developed before a proper review of defendant's IAC claim may be undertaken. Accordingly, we dismiss this assignment of error without prejudice to defendant's asserting it in a motion for appropriate relief. Id. at 167, 557 S.E.2d at 525 ("[S]hould the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding.").
In a second IAC claim, defendant challenges his attorney's failure to request jury instructions on identification and the defense of alibi. Although a defendant must prove both prongs of the Strickland test - ineffectiveness and prejudice - "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." Braswell, 312 N.C. at 563, 324 S.E.2d at 249. Here, we hold that defendant has failed to satisfy the prejudiceprong of the test and, therefore, do not address the adequacy of his attorney's performance.
Our Supreme Court has held that a trial court's failure to give requested instructions on identification and alibi, even when warranted by the evidence, is not prejudicial error when the trial court has instructed the jury that the State must prove beyond a reasonable doubt that the defendant was the perpetrator of the charged offense and committed each element of the crime charged. See State v. Hood, 332 N.C. 611, 618, 422 S.E.2d 679, 682 (1992) (although trial court erred in failing to give requested instruction on alibi, the error was harmless because the trial court's charge "afforded the defendant the same benefits a formal charge on alibi would have afforded"), cert. denied, 507 U.S. 1055, 123 L. Ed. 2d 659, 113 S. Ct. 1955 (1993); State v. Shaw, 322 N.C. 797, 805, 370 S.E.2d 546, 550 (1988) (emphasis original) (finding no prejudice in failure to instruct on identification because trial court repeatedly instructed jurors that to return a guilty verdict, they must be "satisfied that this defendant committed the crime charged").
Here, the trial court gave the same general instructions as in Hood and Shaw, stressing to the jury the requirement that the State prove beyond a reasonable doubt that this defendant, Eugene Alexander Day, was guilty and had committed each element of theoffenses charged. As defendant concedes, if a defendant is not prejudiced by a trial court's failure, under these circumstances, to give requested instructions on identification and alibi, he cannot be prejudiced by his attorney's failure to request those same instructions. Because we find that defense counsel's failure to request jury instructions on alibi and identification did not prejudice defendant, we need not analyze whether defense counsel's performance was actually deficient.
Sufficiency of the Evidence
Defendant also contends the trial court erred in denying his motion to dismiss. In considering a motion to dismiss in a criminal case, the trial judge must decide whether there is substantial evidence of each element of the offense charged. State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "Evidence is `substantial' if a reasonable person would consider it sufficient to support the conclusion that the essential element in question exists." State v. Barnette, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981). If there is substantial evidence - whether direct, circumstantial, or both - to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied. State v. Locklear, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). In reviewing a trial court's denial of a motion to dismiss, the appellate court views the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in the evidence in favor of the State. State v. Taylor, 337 N.C. 597, 604, 447 S.E.2d 360, 365 (1994). The appellate court must then determine, based on that evidence, if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Barnette, 304 N.C. at 458, 284 S.E.2d at 305.
Defendant argues, as to the robbery charge, that the evidence was insufficient to establish that he was the perpetrator. Hendrick's testimony, the witnesses' testimony identifying defendant's voice on the store surveillance tape, and defendant's cellular phone records provided ample evidence of identification. To the extent defendant contends that the evidence lacked substantiality because Hendricks (and Fletcher) were admitted felons, that argument relates to the credibility and weight to be afforded the evidence, a question reserved solely for the jury. State v. McAvoy, 331 N.C. 583, 589, 417 S.E.2d 489, 493-94 (1992).
As to the conspiracy charge, a criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. State v. Bindyke, 288 N.C. 608, 615, 220 S.E.2d 521, 526 (1975). It is not necessary that the State prove an express agreement: "'A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.'" Id. at 615-16, 220 S.E.2d at 526 (quoting State v. Smith, 237 N.C. 1, 16, 74 S.E.2d 291, 301 (1953)). Further, "`[i]t is not essential that each conspirator have knowledge of the details of the conspiracy or of the exact part to be performed by the other conspirators in execution thereof; nor is it necessary that the details be completely worked out in advance to bring a given act within the scope of the general plan.'" State v. Goldberg, 261 N.C. 181, 202, 134 S.E.2d 334, 348 (quoting 15 C.J.S., Conspiracy, p. 998), cert. denied, 377 U.S. 978, 12 L. Ed. 2d 747, 84 S. Ct. 1884 (1964), overruled on other grounds by News & Observer Pub. Co. v. State, 312 N.C. 276, 322 S.E.2d 133 (1984).
Defendant argues that there was no evidence that defendant entered into a conspiracy, but rather that "[a]t the last moment, defendant was thrust into the picture." The State, however, offered evidence that Hendricks and defendant discussed robbing the Citgo convenience store several days before the robbery, Fletcher drove defendant and Hendricks to the store, defendant came prepared by dressing in black clothing and carrying a handgun, defendant and Fletcher arranged that defendant would "guard" Fletcher in thestore during the robbery, defendant allowed Hendricks to use his cell phone to receive the signal to begin the robbery, and, after the robbery, defendant went to collect his share of the money. This evidence was more than sufficient to support a guilty verdict on the conspiracy charge. See State v. Lamb, 342 N.C. 151, 155-56, 463 S.E.2d 189, 191 (1995) (evidence that defendant met with two other men, one of whom was armed; that they drove to the home of the victim; and that the three men entered the home and robbed the victim was sufficient evidence to defeat a motion to dismiss a charge of conspiracy to commit robbery with a dangerous weapon). The trial court did not, therefore, err in declining to dismiss the charges against defendant.
No error.
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).