McGEE, Chief Judge.
 

 *654
 
 Marvin Burton Harris, Jr. ("Defendant") appeals from judgments entered after a jury found him guilty of possession of a firearm
 
 *731
 
 by a felon, carrying a concealed weapon, and resisting a public officer.
 

 I.
 
 Background
 

 Officer Joshua Scales ("Officer Scales"), of the Morehead City Police Department, received a radio dispatch at approximately 2:00 a.m. on 13 November 2014 about a "suspicious subject" in the vicinity of Brook Street in Morehead City, North Carolina. An anonymous female caller described the suspicious person to a 911 operator as a black male with dreadlocks, and reported that the man might have put a black handgun into a backpack. Officer Scales responded to the scene, and saw a man fitting the description given by the caller. Officer Scales stopped his patrol car, identified himself to the man as a police officer, and informed the man that he had "received a call from someone saying that [the man] possibly had a gun on [him]." Officer Scales testified the man "instantly" replied, "[m]an, that girl just mad because I didn't stay the night with her."
 

 Based on the man's actions and body language, Officer Scales testified he had a "real eerie feeling" interacting with the man. Officer Scales repeatedly asked the man if he had something on him that he was not supposed to have. The suspect replied "no," and Officer Scales responded by grabbing the man's backpack. Officer Scales put the backpack on the hood of his patrol car and in doing so "heard a solid thump sound, as in metal ... hitting metal." This "solid thump" sound allowed Officer Scales to "automatically kn[ow] it was a gun" in the man's backpack. The man took off running towards a tree line. Officer Scales gave chase, but slipped and the man escaped. Officer Scales notified dispatch about the encounter and then opened the backpack.
 

 Among other contents of the backpack, Officer Scales found a black Glock .40 caliber handgun and forty-five pages of documents, including hospital records and a traffic collision report, all of which listed Defendant's full name and birthday. After searching for the man for fifteen to twenty minutes, Officer Scales returned to the police station where he placed the gun in evidence, identified Defendant from a Department of Motor Vehicles' photo as the man he had encountered,
 
 [1]
 
 and issued a "BOLO" ("Be On The Lookout For") for Defendant. An arrest warrant was issued for Defendant that same night, 13 November 2014, and Defendant later turned himself in to authorities.
 

 *655
 
 Defendant was indicted on charges of possession of a firearm by a felon, carrying a concealed weapon, resisting a public officer, and attaining the status of a habitual felon. Prior to trial, the State filed two motions that requested,
 
 inter alia
 
 , "[n]otice to the State of any defenses enumerated in N.C. Gen. Stat. § 15A-905 that the Defendant intends to offer at trial" as well as the "[d]isclosure of the identity of any alibi witnesses no later than two weeks before trial." Defendant's trial began on 29 October 2015. At trial, Brittany Hart ("Hart") testified to being the 911 caller on 13 November 2014 and to being "absolutely certain" that the man she encountered that night was not Defendant, but rather was a man named Demetris Nolan ("Nolan").
 

 Hart testified that Nolan knocked on her door on 13 November 2014, sometime between 11:00 p.m. and 12:00 a.m., and entered her home. Once Nolan was inside, Hart noticed he was carrying a gun, and Hart asked Nolan to leave. Nolan responded by grabbing a bag that was in her apartment, and quickly leaving. Hart called 911. Hart testified that she observed Nolan placing a gun into the bag he had taken from her apartment. Hart described Nolan as similar in appearance to Defendant: "a tall, skinny, African-American male with dreadlocks." Hart testified Defendant had been at her home two or three days before the incident, and that his bag was at her apartment because she had previously taken him to the hospital. Hart testified she had looked into the bag at some point and had observed only documents therein. Hart testified Defendant had not been in her apartment on the night of 13 November 2014.
 

 Defendant testified that on 13 November 2014 he was in Pamlico County with his
 
 *732
 
 girlfriend. He denied being in Hart's apartment, having a weapon, encountering Officer Scales, or running away from anyone in the early morning hours of 13 November 2014. Defendant testified that he had been diagnosed with bilateral pulmonary emboli, or blood clots in the lungs, which caused him to have problems with exertion and physical exercise. Defendant testified he could not run, had trouble speaking, and could barely breathe. Defendant testified that Hart had taken him to the hospital after he was in a hit-and-run accident about a month prior to 13 November 2014. Defendant admitted to owning a blue book bag that he left at Hart's home and that had his accident report and insurance company letters inside.
 

 The trial court initially included a pattern jury instruction on alibi, N.C.P.I.-Crim. 301.10, in its proposed jury instructions. During the charge conference, the State objected to the inclusion of N.C.P.I.-Crim. 301.10, and the following colloquy occurred between the prosecutor, the trial court, and Defendant's counsel:
 

 *656
 
 [Prosecutor:] ... Since [Defendant's counsel] didn't give me notice of alibi, I'm going to object to [an instruction on alibi, N.C.P.I-Crim.] 301.10.
 

 THE COURT: There was no notice given. I agree with that. [Defendant's counsel], do you agree that there was no notice given? It just came up here in trial?
 

 [Defendant's counsel:] I certainly would have to agree with that. That's the first time.
 

 THE COURT: I will not instruct on that, but certainly during [closing] argument, I'm sure you will argue what you believe the evidence forecasts in this case. Okay.
 

 The jury found Defendant guilty of possession of a firearm by a felon, carrying a concealed handgun, and resisting, or obstructing or delaying a public officer. The State presented, without objection, certified copies of the three judgments that were used to establish Defendant's prior felony convictions, and Defendant entered a plea of guilty to attaining habitual felon status.
 

 During sentencing, Defendant's counsel informed the trial court that Defendant admitted to the convictions listed on a Form AOC-CR-600B Prior Record Level Worksheet ("the worksheet"). Section I of the worksheet, entitled "Scoring Prior Record/Felony Sentencing," awarded Defendant 8 points for two "Prior Felony Class E or F or G Conviction[s]," 2 points for one "Prior Felony Class H or I Conviction," and 6 points for six "Prior Class A1 or 1 Misdemeanor Conviction[s.]" Despite these numbers totaling 16 points, the trial court made an arithmetic error, and awarded Defendant 17 total points in Section I of the worksheet. An additional point was then added to the total due to "all the elements of the present offense" being "included in any prior offense whether or not the prior offenses were used in determining prior record level."
 

 With the additional point, Defendant's total prior record level points totaled 18 under the trial court's calculation, placing Defendant in the category of a Prior Record Level VI offender. As noted on the worksheet, a Prior Record Level VI offender is any offender with 18 or more prior record level points. Defendant was sentenced to a minimum of 117 months and a maximum of 153 months in prison, in the presumptive range for a Prior Record Level VI offender convicted of a Class C felony.
 
 See
 
 N.C. Gen. Stat. § 15A-1340.17(c) (2015).
 

 At the conclusion of the sentencing hearing, the trial court ordered that Defendant was to be taxed "with the costs of court and attorney fees,
 
 *657
 
 if applicable, if [Defendant's counsel was] court appointed." Defendant's counsel confirmed he was court appointed and informed the trial court that he would prepare the appropriate order for the trial court judge's signature. The trial court ordered that the counsel fees were to be "m[ade] ... a civil judgment."
 

 On 30 October 2015, Defendant's counsel filed the appropriate form, signed by the trial court judge, which approved 52 hours of work by Defendant's counsel. In Line 4 of Section II of the form, next to "Total Amount," a total of $3,640.00 was ordered to be paid to Defendant's attorney. A criminal bill of costs, dated 2 November 2015, lists $3,640.00 in the "attorney fee and expenses"
 

 *733
 
 category and $60.00 in the "attorney appointment fee" category. Defendant appeals.
 

 II.
 
 Analysis
 

 Defendant argues the trial court erred by: (1) depriving Defendant of his state and federal constitutional right to effective assistance of counsel where his counsel's failure to give timely notice of his alibi defense led the trial court, upon the State's motion, to decline to give an alibi jury instruction; (2) sentencing Defendant as a prior record level VI offender where, due to a miscalculation, the court incorrectly found Defendant had 18 prior conviction points; and (3) imposing attorney's fees and an appointment fee without providing Defendant with sufficient notice and the opportunity to be heard concerning those fees.
 

 A.
 
 Ineffective Assistance of Counsel
 

 Defendant argues he received ineffective assistance of counsel when his trial counsel committed a discovery violation, which led the trial court to refuse to give a jury instruction on alibi. In order to show ineffective assistance of counsel, a defendant must satisfy the two-prong test announced by the Supreme Court of the United States in
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). This test for ineffective assistance of counsel has also been explicitly adopted by the Supreme Court of North Carolina for state constitutional purposes.
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 562-63,
 
 324 S.E.2d 241
 
 , 248 (1985). Pursuant to
 
 Strickland
 
 :
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This
 
 *658
 
 requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
 

 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at
 
 693 ;
 
 accord
 

 Braswell
 
 ,
 
 312 N.C. at 561-62
 
 ,
 
 324 S.E.2d at 248
 
 .
 

 In general, "claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal."
 
 State v. Stroud
 
 ,
 
 147 N.C. App. 549
 
 , 553,
 
 557 S.E.2d 544
 
 , 547 (2001). However, an ineffective assistance of counsel claim brought on direct review "will be decided on the merits when the cold record reveals that no further investigation is required[.]"
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 166,
 
 557 S.E.2d 500
 
 , 524 (2001). "[O]n direct appeal, the reviewing court ordinarily limits its review to material included in the record on appeal and the verbatim transcript of proceedings, if one is designated."
 
 Id
 
 . at 167, 557 S.E.2d at 524-25 (citation omitted). Because the cold record reveals that no further investigation is needed, we determine Defendant's ineffective assistance of counsel claim on direct review.
 

 We first examine whether Defendant's counsel was deficient, in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment."
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . Defendant argues his trial counsel was deficient because he failed to give notice to the State of Defendant's intent to offer an alibi witness. Defendant reasons that this failure was a violation of the discovery rules contained in N.C. Gen. Stat. § 15A-905, and resulted in the trial court declining to give an alibi jury instruction. We find that Defendant's argument on appeal is trained on the wrong target: the trial court's decision to decline to give an alibi jury instruction was not due to trial counsel's ineffectiveness, but rather due to the trial court's error.
 

 North Carolina's superior court discovery procedures are codified at N.C. Gen. Stat. §§ 15A-901 - 15A-910. A party seeking discovery in superior court must first make a written request that the opposing party voluntarily comply with a discovery request.
 
 See
 
 N.C. Gen. Stat. § 15A-902(a) (2015). If the opposing party provides a "negative or unsatisfactory response" to the discovery request, or fails to respond, then the "party requesting
 
 *734
 
 discovery may file a motion for discovery[.]"
 

 Id.
 

 Once the State in a criminal case has provided discovery-either voluntarily
 
 *659
 
 or under a court order-reciprocal discovery by a defendant is governed by N.C. Gen. Stat. § 15A-905. N.C.G.S. § 15A-905 provides, in pertinent part:
 

 If the court grants any relief sought by the defendant under [N.C. Gen. Stat. §] 15A-903, or if disclosure is voluntarily made by the State pursuant to [N.C. Gen. Stat. §] 15A-902(a),
 
 the court must, upon motion of the State, order the defendant to
 
 ...
 
 [g]ive notice to the State
 
 of the intent to offer at trial a defense of alibi ... within 20 working days after the date the case is set for trial ... or such other later time as set by the court[.] ... As to the defense of alibi, the court
 
 may order
 
 , upon motion by the State, the disclosure of the identity of alibi witnesses no later than two weeks before trial.
 

 N.C. Gen. Stat. § 15A-905(c)(1) (2015) (emphases added).
 

 In the present case, the State filed a document on 27 January 2015 styled as an "answer to Defendant's motion for discovery, notice, and State's request for discovery and disclosure and alternatively motion to compel discovery and disclosure" (all caps omitted) (the "27 January 2015 answer and motion").
 
 [2]
 
 The 27 January 2015 answer and motion made several disclosures "pursuant to N.C. Gen. Stat. § 15A-901,
 
 et seq.
 
 ," such as the State's intent to: (1) call an expert witness; (2) "introduce into evidence a juvenile conviction of [Defendant];" and (3) "introduce a statement ... made by [Defendant]." The 27 January 2015 answer and motion also requested that Defendant voluntarily provide, among other things, "[d]isclosure of the identity of any alibi witnesses no later than two weeks before trial." If Defendant "fail[ed] to give a satisfactory response or refuse[d] to provide the requested voluntary discovery," the State "respectfully pray[ed] that the [trial court] ... treat the [State's disclosure requests] as a Motion for Discovery and Disclosure and ... issue an order compelling [Defendant] to provide the foregoing items," including notice about an alibi witness. The State filed a supplement to its 27 January 2015 answer and motion on 1 September 2015, which included an identical request with respect to Defendant's intent to call an alibi witness.
 

 *660
 
 No discovery by Defendant, voluntary or otherwise, appears in the record on appeal in the present case, and Defendant's trial counsel admitted during the charge conference that he did not provide any notice to the State of Defendant's intent to offer an alibi witness. However, a defendant is only required to give notice of an alibi witness after being ordered to do so by the trial court.
 
 See
 
 N.C.G.S. 15A-905 (providing that, after the State has provided discovery to a defendant, "
 
 the court must,
 
 upon motion of the State,
 
 order
 
 the defendant to ... [g]ive notice to the State of the intent to offer at trial a defense of alibi" (emphases added)). In the present case, it appears-after a review of the record on appeal and transcript of the trial proceedings-that the trial court never entered an order requiring Defendant to disclose the information requested by the State in its 27 January 2015 answer and motion. N.C.G.S. § 15A-905(c)(1) unambiguously states that, once the State has made discovery disclosures, "the court must, upon motion of the State,
 
 order
 
 the defendant to ... [g]ive notice to the State of the intent to offer at trial a defense of alibi[.]" N.C.G.S. § 15A-901(c)(1). (emphasis added).
 

 A defendant is under no duty to provide discovery until ordered to do so by the trial court, and because the trial court did not order Defendant to "give notice to the State of the intent to offer at trial a defense of alibi," he was under no duty or requirement to do so. Therefore, Defendant's counsel was not deficient in failing to disclose Defendant's intent to offer an alibi witness. Even if the trial court had ordered Defendant to disclose his intent to offer an alibi, the trial court is
 
 *735
 
 statutorily required to "make specific findings justifying the imposed sanction" before imposing "any sanction." N.C. Gen. Stat. § 15A-910(d) (2015). The trial court made no findings of fact justifying a discovery sanction and was therefore mistaken in sanctioning Defendant's failure to disclose his alibi witness to the State. This further demonstrates that Defendant's grievance is not with his own counsel, as he argues in his brief, but with the trial court's erroneous imposition of discovery sanctions and failure to give an instruction on alibi.
 

 Even if we were to find that trial counsel's performance was deficient, Defendant is unable to demonstrate that counsel's "deficient performance prejudiced the defense" in that his counsel made "errors ... so serious as to deprive [Defendant] of a fair trial, a trial whose result is reliable."
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . Although the trial court declined to give a jury instruction on alibi, the alibi evidence-Defendant's testimony that he was in Pamlico County with his girlfriend at the time of the offense-was heard and considered by the jury.
 

 *661
 

 State v. Hood
 
 ,
 
 332 N.C. 611
 
 ,
 
 422 S.E.2d 679
 
 (1992), is instructive. In
 
 Hood
 
 , the defendant presented evidence that he was in another city at the time of the crime with which he was charged.
 
 Hood
 
 ,
 
 332 N.C. at 617
 
 ,
 
 422 S.E.2d at 682
 
 . The defendant requested a jury instruction on alibi, and the trial court declined to give such an instruction.
 

 Id.
 

 Although the trial court erred in failing to give the requested instruction, our Supreme Court held that the error did not prejudice the defense due to the instructions that
 
 were
 
 given to the jury:
 

 the trial court instructed the jury that the defendant is presumed innocent, that he is not required to prove his innocence, and that the State bears the burden of proving guilt beyond a reasonable doubt. The trial court instructed the jury on the essential elements of the crimes charged, telling the jury that it could not return guilty verdicts unless it found that every element had been established beyond a reasonable doubt.... The trial court made it clear that the burden was on the State to prove every element of the crimes charged beyond a reasonable doubt, and the jury was not led to believe that the defendant had to prove anything in order to be found not guilty.
 
 Because the trial court's charge afforded the defendant the same benefits a formal charge on alibi would have afforded, the defendant was not prejudiced by the trial court's error.
 

 Id.
 
 at 617-18,
 
 422 S.E.2d at 682
 
 (citation omitted) (emphasis added).
 

 In the present case, as in
 
 Hood
 
 , the trial court instructed the jury that Defendant was not required to prove his innocence, that Defendant was presumed innocent, and that the State needed to prove beyond a reasonable doubt that Defendant was the perpetrator of the charged offenses. The trial court then instructed the jury as to each element that the State was required to prove beyond a reasonable doubt for each of the charged offenses. The trial court reiterated in its outlining of these elements that, if the jury did not find these elements or have a reasonable doubt about them, then they should find Defendant not guilty.
 

 Even assuming Defendant's trial counsel's performance was deficient, Defendant has not shown that the deficient performance likely affected the jury's verdict. The alibi evidence was presented to the jury at trial. The trial court correctly instructed the jury that Defendant was presumed to be innocent, and that the burden was on the State to prove every element of every crime beyond a reasonable doubt. Because "the trial court's charge afforded [D]efendant the same benefits a formal
 
 *662
 
 charge on alibi would have afforded, [Defendant] was not prejudiced" by the absence of the alibi jury instruction.
 
 Hood
 
 ,
 
 332 N.C. at 617-18
 
 ,
 
 422 S.E.2d at 682
 
 . Therefore, Defendant has not shown he was afforded ineffective assistance of counsel.
 

 B.
 
 Prior Record Level Determination
 

 Defendant argues the trial court erred in sentencing him as a Prior Record Level VI offender where, due to a miscalculation, the court incorrectly found that Defendant had 18 prior conviction points. "The determination of an offender's prior record level is a conclusion of law that is subject to
 
 de novo
 
 review on appeal."
 

 *736
 

 State v. Bohler
 
 ,
 
 198 N.C. App. 631
 
 , 633,
 
 681 S.E.2d 801
 
 , 804 (2009). "It is not necessary that an objection be lodged at the sentencing hearing in order for a claim that the record evidence does not support the trial court's determination of a defendant's prior record level to be preserved for appellate review."
 

 Id.
 

 In sentencing a defendant, a trial court must "determine the prior record level for the offender pursuant to [N.C. Gen. Stat. §] 15A-1340.14" before imposing a sentence. N.C. Gen. Stat. § 15A-1340.13(b) (2015). "The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions[.]" N.C. Gen. Stat. § 15A-1340.14(a) (2015). Convictions "used to establish a person's status as an habitual felon shall not be used."
 
 N.C. Gen. Stat. § 14-7.6
 
 (2015). Prior convictions may be proven, as relevant here, by stipulation of the parties. N.C. Gen. Stat. § 15A-1340.14(f) (2015).
 

 In the present case, the trial court calculated the sum of the points assigned to each of Defendant's prior convictions and, excluding those convictions used as predicates for Defendant's habitual felon status, determined Defendant had earned 18 prior record level points. Defendant is correct that the trial court committed an arithmetic error in "calculating the sum of the points assigned to each of" Defendant's prior convictions. The trial court assessed 8 points for two "Prior Felony Class E or F or G Conviction[s]," 2 points for one "Prior Felony Class H or I Conviction," 6 points for six "Prior Class A1 or 1 Misdemeanor Conviction[s]," and 1 point for "all the elements of the present offense" being included in "any prior offense." Despite these numbers totaling 17 points, the trial court found the total to be 18.
 
 [3]
 
 This mathematical
 
 *663
 
 error lead the trial court to sentence Defendant as a Prior Record Level VI offender, as opposed to a Prior Record Level V offender.
 

 The State concedes the mathematical error in Defendant's prior record level calculation, but argues the error was harmless.
 
 See
 

 State v. Lindsay
 
 ,
 
 185 N.C. App. 314
 
 , 315,
 
 647 S.E.2d 473
 
 , 474 (2007) ("This Court applies a harmless error analysis to improper calculations of prior record level points." (citations omitted)). Our precedent compels us to agree. "[T]his Court repeatedly has held that an erroneous record level calculation does not prejudice the defendant if the trial court's sentence is within the presumptive range at the correct record level."
 
 State v. Ballard
 
 , --- N.C. App. ----, ----,
 
 781 S.E.2d 75
 
 , 79 (2015),
 
 disc. review denied
 
 ,
 
 368 N.C. 763
 
 ,
 
 782 S.E.2d 514
 
 (2016) (citing
 
 State v. Ledwell
 
 ,
 
 171 N.C. App. 314
 
 , 321,
 
 614 S.E.2d 562
 
 , 567 (2005) );
 
 see also
 

 State v. Rexach
 
 ,
 
 240 N.C. App. 90
 
 ,
 
 772 S.E.2d 13
 
 ,
 
 2015 WL 1201250
 
 , at *2 (2015) (unpublished) ("An error in the calculation of a defendant's prior record level points is deemed harmless if the sentence imposed by the trial court is within the range provided for the correct prior record level.").
 

 The presumptive range of minimum sentences for a Prior Record Level V offender convicted of a Class C felony is between 101 and 127 months' imprisonment, and the presumptive range of minimum sentences for a Prior Record Level VI offender convicted of a Class C felony is between 117 and 146 months' imprisonment.
 
 See
 
 N.C.G.S. § 15A-1340.17(c). In the present case, Defendant was sentenced to a minimum of 117 months' imprisonment, which is within the presumptive range of minimum sentences for both a Prior Record Level V and VI offender. Therefore the trial court's error, if present, was harmless.
 
 Ballard
 
 , --- N.C. App. at ----,
 
 781 S.E.2d at 79
 
 .
 

 *737
 
 C.
 
 Attorney's and Appointment Fees
 

 Defendant argues the civil judgment imposing fees against him should be vacated because neither Defendant's counsel's total attorney fee amount nor the appointment fee were discussed in open court with Defendant or in his presence. We agree. In
 
 State v. Jacobs
 
 ,
 
 172 N.C. App. 220
 
 ,
 
 616 S.E.2d 306
 
 (2005), this Court held that where there is "no indication in the record that [a] defendant was notified of and given an
 
 *664
 
 opportunity to be heard regarding the appointed attorney's total hours or the total amount of fees imposed," the imposition of attorney's fees must be vacated, even when "the transcript reveals that attorney's fees were discussed following defendant's conviction."
 
 Jacobs
 
 ,
 
 172 N.C. App. at 236
 
 ,
 
 616 S.E.2d at 317
 
 .
 

 Following Defendant's conviction and sentencing in the present case, the trial court simply stated that Defendant was to be taxed, "with the costs of court and attorney fees, if applicable, if [Defendant's counsel was] court appointed." Defendant's counsel confirmed he was court appointed, and the trial court responded that the counsel fees were to be "m[ade] ... a civil judgment." The total hours and amount of attorney's fees imposed-52 and $3,640.00, respectively-were not known at the time of the sentencing hearing, as Defendant's counsel had not yet calculated the number of hours he had worked. Because there is no indication in the record that Defendant "was notified of and given an opportunity to be heard regarding the appointed attorney's total hours or the total amount of fees imposed," the imposition of attorney's fees must be vacated.
 
 Jacobs
 
 ,
 
 172 N.C. App. at 236
 
 ,
 
 616 S.E.2d at 317
 
 . "On remand, the State may apply for a judgment in accordance with N.C. Gen. Stat. § 7A-455, provided that [D]efendant is given notice and an opportunity to be heard regarding the total amount of hours and fees claimed by the court-appointed attorney."
 

 Id.
 

 Defendant was also ordered to pay a $60.00 appointment fee, in accordance with N.C. Gen. Stat. § 7A-455.1 (2015). As with the attorney's fees, the appointment fee was never discussed with Defendant in open court. Our Supreme Court has held that "[c]osts are imposed only at sentencing, so any convicted indigent defendant is given notice of the appointment fee at the sentencing hearing and is also given an opportunity to be heard and object to the imposition of this cost."
 
 State v. Webb
 
 ,
 
 358 N.C. 92
 
 , 101-02,
 
 591 S.E.2d 505
 
 , 513 (2004). Because Defendant was not given notice of the appointment fee and an opportunity to object to the imposition of the fee at his sentencing hearing, the appointment fee is also vacated without prejudice to the State again seeking appointment fee on remand.
 
 Jacobs
 
 ,
 
 172 N.C. App. at 236
 
 ,
 
 616 S.E.2d at
 
 317 ;
 
 see also
 

 State v. Mosteller
 
 , --- N.C. App. ----,
 
 790 S.E.2d 753
 
 ,
 
 2016 WL 3584616
 
 at *4, 2016 N.C. App. LEXIS 697 at *9-10 (vacating the imposition of appointment fee "without prejudice to the State's right to seek the imposition of ... [the] appointment fee" on remand, "provided that the defendant is given notice and an opportunity to be heard").
 

 *665
 
 III.
 
 Conclusion
 

 For the reasons stated, Defendant did not receive ineffective assistance of trial counsel from his counsel's failure to give timely notice of an alibi defense, and any error in Defendant's prior record level calculation was harmless under precedents of this Court. However, we vacate the trial court's award of attorney's fees and appointment fee, without prejudice to the State's ability to again seek them on remand.
 

 NO ERROR IN PART; NO PREJUDICIAL ERROR IN PART; VACATED AND REMANDED IN PART.
 

 Judges HUNTER, JR. and ZACHARY concur.
 

 [1]
 

 At trial, Officer Scales identified Defendant in open court as the man he encountered on 13 November 2014.
 

 [2]
 

 It is unclear whether the 27 January 2015 answer and motion was filed voluntarily in response to a written request by Defendant for voluntary disclosure, or after a motion for discovery was filed by Defendant pursuant to N.C.G.S. § 15A-902(a). The 27 January 2015 answer and motion is labeled as an "answer to Defendant's motion for discovery," but no such motion by Defendant appears in the record on appeal.
 

 [3]
 

 We note that Defendant stipulated to the total number of points, 18, and to his prior record level, VI. However, a trial court's assignment of an incorrect record level is "an improper conclusion of law, which we review
 
 de novo
 
 ."
 
 State v. Fraley
 
 ,
 
 182 N.C. App. 683
 
 , 691,
 
 643 S.E.2d 39
 
 , 44 (2007). "Stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate."
 
 State v. Prevette
 
 ,
 
 39 N.C. App. 470
 
 , 472,
 
 250 S.E.2d 682
 
 , 683 (citation omitted),
 
 disc. review denied and appeal dismissed
 
 ,
 
 297 N.C. 179
 
 ,
 
 254 S.E.2d 38
 
 (1979). Therefore, Defendant's stipulation of his prior record level "does not preclude our
 
 de novo
 
 appellate review of the trial court's calculation of [D]efendant's prior record level[.]"
 
 State v. Massey
 
 ,
 
 195 N.C. App. 423
 
 , 429,
 
 672 S.E.2d 696
 
 , 699 (2009)