STATE OF NORTH CAROLINA v. ARCHIE FURMAN McLEMORE, III

No. 56A95

(Filed 10 May 1996)

### 1. Robbery § 71 (NCI4th)— taking of car as part of murder— evidence insufficient

The trial court erred by denying defendant's motion to dismiss a charge of robbery with a dangerous weapon arising from the killing of his mother where the evidence was insufficient to show that defendant used a weapon to force the victim to give him her car. The State's evidence shows no more than that the defendant already had possession and use of the vehicle before the killing and retained the vehicle afterwards.

**Am Jur 2d, Robbery §§ 5, 22, 62 et seq.**

STATE v. McLEMORE

[343 N.C. 240 (1996)]

**2. Evidence and Witnesses § 172 (NCI4th)— murder—victim's statements—relevant**

The trial court did not err in a prosecution for first-degree murder by admitting statements made by the victim which defendant admits fall under N.C.G.S. § 8C-1, Rule 803(3) but contends are not relevant. Evidence that the victim intended to decrease the financial benefits flowing to her son, the defendant, as well as evidence that she was angry and intended to give her son an ultimatum, was relevant to show the status of their relationship just prior to the victim's death. Both statements also were relevant as they related to a potential confrontation with the defendant, and whether defendant knew of the statements is irrelevant.

**Am Jur 2d, Evidence §§ 556, 667.**

**3. Evidence and Witnesses § 172 (NCI4th)— murder—victim's statements—admissible**

The trial court did not err in a first-degree murder prosecution by admitting statements by the victim where the statements were not admitted to prove the truth of the matter asserted, the relevance was so remote as to render admission harmless, or the statements were admissible in light of the admissibility of other statements.

**Am Jur 2d, Evidence §§ 556, 667.**

**4. Evidence and Witnesses §§§ 923, 929, 1162 (NCI4th)— murder—defendant's statement to wife—instruction to call father and police—admissible**

The trial court in a first-degree murder prosecution properly admitted testimony from the defendant's father and from a detective that defendant's wife had told them of a telephone call in which defendant had told her that he had shot his mother and asked her to call his father and have him call the police. Defendant did not intend that his statement to his wife be confidential; he specifically told her to let other people know what he had told her. Although the testimony of the father and the detective was hearsay, the father's testimony fits easily under the excited utterance exception because the wife called him approximately three minutes after her conversation with defendant, when she would have been under the influence of an undoubtedly startling event. As to the detective, even if the rule applies that

STATE v. McLEMORE

[343 N.C. 240 (1996)]

the hearsay statement of an agent cannot be used to establish agency, the rule is satisfied through the testimony of the father, admitted under another exception. N.C.G.S. § 8C-1, Rules 803(2),801(d)(C).

**Am Jur 2d, Evidence § 865; Witnesses §§ 309-319.**

**Marital privilege under Rule 501 of Federal Rules of Evidence. 46 ALR Fed. 735.**

**When is hearsay statement an "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed. 451.**

5. **Homicide § 253 (NCI4th)— first-degree murder—premeditation and deliberation—evidence sufficient**

There was sufficient evidence of premeditation and deliberation in a first-degree murder prosecution where defendant did not make any statement as to how the killing occurred other than a telephone call to his wife in which he said that he had killed his mother and that she should tell his father to call the police; the victim was shot several times in the head and back and was stabbed in the back; the trigger on the rifle found to have fired the casings at the scene had to be pulled each time the weapon was fired; there is no evidence that the victim had a weapon or offered any threat to defendant; and she was unarmed and lying in her bed wearing headphones when she was killed.

**Am Jur 2d, Homicide § 439.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

6. **False Pretenses, Cheats, and Related Offenses § 70.1 (NCI4th)— financial transaction card theft—sufficiency of evidence**

Judgment on the charges of financial transaction card theft and fraud was arrested in a prosecution arising from the killing of defendant's mother where there was no direct evidence that defendant did not have permission to use the card, defendant knew the correct combination of numbers to receive money from the machine, and must have learned the combination from his mother, which shows she could have allowed him to use the card, he used the card at least two days before the death of his mother,

**STATE v. McLEMORE**

[343 N.C. 240 (1996)]

which shows he had the card in his possession while his mother was alive, and there is no indication that she objected to his having it.

**Am Jur 2d, Fraud and Deceit §§ 468 et seq.; Larceny §§ 28 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Guice, J., at the 4 April 1994 Criminal Session of Superior Court, Buncombe County, upon a jury verdict of guilty of first-degree murder based on premeditation and deliberation and felony murder. The defendant's motion to bypass the Court of Appeals on other judgments was allowed 2 February 1995. Heard in the Supreme Court 16 November 1995.

The defendant was tried for first-degree murder in a case in which the State sought the death penalty. In the same action, the defendant was tried for robbery with a dangerous weapon, financial transaction card theft, and financial transaction card fraud. The State's evidence showed that at the end of May 1993, the defendant had been separated from his wife for approximately six months and had been living with his mother, Melinda McDowell, during that time. Melinda McDowell worked as a nurse for the State Department of Environment, Health, and Natural Resources and also operated a business called "A Relaxing Practice." The defendant helped his mother operate this business.

Mrs. McDowell was last known to be alive on 31 May 1993, when she had a telephone conversation about her health with co-worker Fran Jones. At some time around 1 June 1993, Mrs. McDowell was shot to death in her bedroom. On 3 June 1993, the defendant called his estranged wife, Robin McLemore, and told her that he had shot his mother. The defendant asked his wife to call his father, Archie McLemore, Sr., and tell him to call the police. The defendant would not reveal his whereabouts to his wife, but said the police would find him in a few days. The defendant's wife called her father-in-law, who called the police. The police went to Mrs. McDowell's home and found her body. She had been shot several times in the head and stabbed in the back. A forensic pathologist testified that Mrs. McDowell died at least one and possibly seven days before he performed the autopsy on 4 June 1993. Videotape of the automated teller machines at two separate locations revealed that the defendant with-

drew $200.00 from his mother's State Employees' Credit Union account on 29 May, 30 May, and 1 June.

On 5 June 1993, the defendant again called his estranged wife and told her he was at her stepfather's farm outside Bristol, Virginia. He said he would surrender to Darold Long, a bail bondsman in Asheville. Mr. Long drove to the farm of Robin McLemore's stepfather and found the defendant. Mr. Long then took the defendant to meet with an agent of the Tennessee Bureau of Investigation, who placed the defendant under arrest.

The defendant had driven his mother's automobile to Kingsport, Tennessee, on 1 June 1993 and spent two days in a motel. He then drove to Bristol, Virginia. The officers recovered from a pond on the farm of Robin McLemore's stepfather five weapons, including a Marlin 60 .22-caliber semiautomatic rifle. These weapons had been stolen from Jarod Turner's residence in Blountville, Tennessee, at a time the defendant was living next door to him. A ballistics expert testified that cartridge casings found in the victim's home were fired from the Marlin 60 .22-caliber semiautomatic rifle retrieved from the pond.

The defendant was found guilty of all the charges against him. After a capital sentencing proceeding, the jury recommended he be sentenced to life in prison, and this sentence was imposed. The defendant was also sentenced to forty years in prison on the robbery with a dangerous weapon conviction and three years in prison for each of the credit card offenses. The sentences are to run consecutively.

The defendant appealed.

*Michael F. Easley, Attorney General, by Mary D. Winstead, Associate Attorney General, for the State.*

*David G. Belser for the defendant-appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the denial of his motion to dismiss the charge of robbery with a dangerous weapon. We believe this assignment of error has merit.

The evidence in this case was insufficient to show that the defendant used a weapon to force the victim to give him her car. The record is devoid of any evidence that the defendant's use of a firearm

preceded or was concomitant with his taking possession of the victim's Cadillac or induced the victim to part with her property. *See State v. Richardson,* 308 N.C. 470, 302 S.E.2d 799 (1983). In addition, there is no evidence that the taking of the Cadillac was part of a single continuous transaction that involved the use of a firearm. *See State v. Hope,* 317 N.C. 302, 345 S.E.2d 361 (1986). To the contrary, evidence elicited from the State's own witnesses indicated that the defendant had permission to use the car and had often done so in the past to visit his wife and probation officer in Tennessee and in working with his mother in her business. The State concedes in its brief that the defendant had the victim's consent on previous occasions to drive the victim's Cadillac. The State's evidence shows no more than that the defendant already had possession and use of the vehicle before the killing and retained the vehicle afterwards.

For the foregoing reasons, we arrest judgment on the conviction and sentence for robbery with a dangerous weapon.

[2] The defendant's next two assignments of error concern alleged hearsay testimony of two witnesses. In his second assignment of error, the defendant contends that the admission of statements that the victim made to Fran Jones in mid-May was unduly prejudicial and violated his Sixth Amendment right to confrontation. Fran Jones, an employee at the North Carolina Department of Environment, Health, and Natural Resources, testified at trial that the victim spoke with her about her intention to make changes in her will, retirement account, and hospitalization plan. The victim allegedly declared her intention to do the following: (1) change the beneficiary of her retirement account from the defendant as sole beneficiary to the defendant and his sister as co-beneficiaries; (2) change her hospitalization plan to cover herself only, and not the defendant; and (3) change her will in some unspecified way. The defendant also contends that the trial court improperly admitted the testimony of Melissa McLemore, the victim's daughter, that shortly before the killing, the victim told her in a phone conversation that she was angry with the defendant and was planning to "lay down the law," to give the defendant a choice between living with her and fulfilling his responsibilities or moving back in with his wife.

The defendant apparently concedes that the statements to Fran Jones fell under N.C.G.S. § 8C-1, Rule 803(3), but argues that the statements were not admissible because they were not relevant to the case. Under Rule 803(3), hearsay evidence may be admitted to show

STATE v. McLEMORE

[343 N.C. 240 (1996)]

the declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." N.C.G.S. § 8C-1, Rule 803(3) (1992). Evidence tending to show the victim's state of mind is admissible so long as the victim's state of mind is relevant to the case and its probative value is not outweighed by potential prejudice to the defendant. *State v. Stager*, 329 N.C. 278, 314, 406 S.E.2d 876, 897 (1991). The victim's state of mind is relevant to show the status of the relationship between the victim and the defendant. *State v. Alston*, 341 N.C. 198, 230-31, 461 S.E.2d 687, 704 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 100 (1996); *State v. Cummings*, 326 N.C. 298, 313, 389 S.E.2d 66, 74 (1990). Furthermore, we recently held that a victim's state of mind is relevant if it relates directly to circumstances giving rise to a potential confrontation with the defendant. *State v. Corbett*, 339 N.C. 313, 332, 451 S.E.2d 252, 262 (1994).

In the case *sub judice*, evidence that the victim intended to decrease the financial benefits flowing to her son, as well as evidence that she was angry and intended to give her son an ultimatum, was relevant to show the status of their relationship just prior to the victim's death. Both statements also were relevant as they related to a potential confrontation with the defendant. Whether the defendant knew of the statements is irrelevant. Such evidence supported the State's theory of motive for the killing and was properly admitted. *See State v. Greene*, 324 N.C. 1, 16, 376 S.E.2d 430, 440 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990).

[3] The defendant also assigns error to the admission of other hearsay statements made by the victim to her daughter just days before the killing. The defendant argues that certain of the statements were unfairly prejudicial to him.

The defendant again argues the impropriety of admitting statements the victim made during the 23 May 1993 conversation concerning her intention to "lay down the law." As discussed above, this statement was admissible under Rule 803(3). During a 29 May 1993 conversation, the victim, who was at the time sick with asthmatic bronchitis, stated that the defendant had asked her to call to tell her that if she died of the condition, it was not his fault. The witness testified that the defendant was in the room with the victim at the time. This testimony was not admitted to prove the truth of the matter asserted and was therefore not hearsay. N.C.G.S. § 8C-1, Rule 801(c) (1992). Assuming that the evidence should not have been admitted, its

relevance was so remote that its admission was harmless. N.C.G.S. § 15A-1443(a) (1988). Finally, Melissa McLemore testified to several conversations she had with the decedent between Christmas of 1992 and the date of her death concerning financial matters. The defendant argues that the absence of evidence as to exactly when these conversations occurred renders their admission even more objectionable than the admission of the conversation with Fran Jones. In light of the admissibility of the latter conversation, the admission of the victim's statements to her daughter concerning her financial matters was proper.

These assignments of error are overruled.

[4] The defendant next assigns error to the admission of testimony of Archie McLemore, Sr., the defendant's father, and H.B. Oxner, a detective with the City of Asheville Police Department. These two witnesses were allowed to testify that Robin McLemore had told them of the telephone call the defendant had made to her in which he told her he had shot his mother and asked her to call his father.

The defendant made a motion to suppress the testimony of Det. Oxner, and a hearing was held outside the presence of the jury. Robin McLemore stated at the hearing that she would not testify against her husband. The court held that the statement of the defendant to his wife was meant to be conveyed to the defendant's father and the police and was not a confidential communication.

The defendant contends that the statement he made to his wife was a confidential communication and should not have been introduced against him. He says further that if we should hold it was not a confidential communication, it was hearsay and should not have been admitted.

An extrajudicial confidential statement made by one spouse to another may not be used against the spouse who made the statement. *State v. Rush*, 340 N.C. 174, 182, 456 S.E.2d 819, 823 (1995). In this case, the defendant told his wife he had shot his mother and asked her to tell his father and ask him to call the police. He did not intend that his statement to his wife be confidential. He told her specifically to let other people know what he had told her. The testimony of Det. Oxner and Archie McLemore, Sr. as to what Robin McLemore said the defendant told her was admissible unless it was barred by the hearsay rule.

The testimony of Det. Oxner and Archie McLemore, Sr. that Robin McLemore told them the defendant said that he had shot his mother was hearsay because it was introduced to prove the truth of the matter asserted, that the defendant shot his mother. N.C.G.S. § 8C-1, Rule 801(c) (1992). It was error to admit the testimony of either witness unless his testimony could be admitted under an exception to the hearsay rule.

The testimony of Archie McLemore, Sr. fits easily under N.C.G.S. § 8C-1, Rule 803(2), the excited utterance exception to the hearsay rule. Robin McLemore called her father-in-law approximately three minutes after she had talked to her husband. The telephone conversation in which the defendant told his wife he had shot his mother was undoubtedly a startling event. Robin McLemore would have been under its influence three minutes after it occurred. There is little likelihood that she fabricated this message to her father-in-law. This testimony by Archie McLemore, Sr. was admissible. *See State v. Sneed*, 327 N.C. 266, 272, 393 S.E.2d 531, 534 (1990).

As to the testimony of Det. Oxner, we hold it was admissible under N.C.G.S. § 8C-1, Rule 801(d)(C). This rule provides in part:

A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . a statement by a person authorized by him to make a statement concerning the subject.

N.C.G.S. § 8C-1, Rule 801(d)(C) (1992). In this case, the statement was introduced against the defendant, and he had authorized Robin McLemore to make a statement concerning the subject.

Doubt has been raised as to the continuing validity of the rule that agency may not be proven by the hearsay statement of the agent. *See* 2 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 201 (4th ed. 1993). However, if the rule applies that the hearsay statement of an agent cannot be used to establish the agency, *see Jocie Motor Lines, Inc. v. International Broth. of Teamsters*, 260 N.C. 315, 327, 132 S.E.2d 697, 705 (1963), we believe the rule is satisfied by proof of Robin McLemore's authority to make the statement through the testimony of Archie McLemore, Sr. Although Mr. McLemore used hearsay testimony to prove Robin McLemore's authority, we have held it was properly admitted under another exception to the hearsay rule. It was therefore properly before the jury as proof of Robin McLemore's authority.

This assignment of error is overruled.

**[5]** The defendant next assigns error to the denial of his motion to dismiss the charge of first-degree murder. He was found guilty based on the felony murder rule and on the theory of premeditation and deliberation. We have held that there was not sufficient evidence to convict the defendant of the underlying felony of robbery with a dangerous weapon. For this reason, the conviction of felony murder cannot stand. Although the defendant should not have been convicted of felony murder, the verdict cannot be disturbed if the evidence supports a conviction based on premeditation and deliberation. *See State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989).

The defendant did not make any statement as to how the killing occurred other than the statement to his wife. The victim was shot several times in the head and back and was stabbed in the back. The trigger on the rifle found to have fired the casings at the scene had to be pulled each time the weapon was fired. These repeated assaults are evidence that the defendant intended to kill his mother and did so after premeditation and deliberation. *State v. Austin*, 320 N.C. 276, 357 S.E.2d 641, *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987). There is also no evidence that the victim had a weapon or offered any threat to the defendant. The victim was unarmed and lying in her bed wearing headphones when she was killed. This is evidence that there was no provocation for the shooting of defendant's mother. This evidence was sufficient for the jury to find the murder of defendant's mother was with premeditation and deliberation. *State v. Truesdale*, 340 N.C. 229, 456 S.E.2d 299 (1995); *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984).

This assignment of error is overruled.

**[6]** The defendant next assigns error to the denial of his motion to dismiss the charges of financial transaction card theft, N.C.G.S. § 14-113.9(a)(1) (1993), and financial transaction card fraud, N.C.G.S. § 14-113.13(a)(1) (1993). He contends the State did not prove he did not have the consent of his mother to use the card. We believe this assignment of error has merit.

There was no direct evidence that defendant did not have permission to use the card. The defendant knew the correct combination of numbers to receive money from the machine. He must have learned this combination from his mother, which shows she could have allowed him to use the card. He used the card at least two days before the death of his mother, which shows he had the card in his possession while his mother was alive, and there is no indication that

she objected to his having it. We hold that there was not substantial evidence from which the jury could find the defendant did not have permission to use the card. We arrest judgment on the charges of financial transaction card theft and fraud.

In his last assignment of error, the defendant contends there was error in the charge on robbery with a dangerous weapon. We have arrested judgment on this offense, and this assignment of error is moot.

NO. 93-CRS-4012, ROBBERY WITH A DANGEROUS WEAPON: JUDGMENT ARRESTED;

NO. 93-CRS-57506, FIRST-DEGREE MURDER: NO ERROR;

NO. 93-CRS-4011, FINANCIAL TRANSACTION CARD THEFT AND FRAUD: JUDGMENTS ARRESTED.