STATE OF NORTH CAROLINA v. JAMES EDWARD BREWINGTON, JR.

No. COA08-501

(Filed 3 February 2009)

**Homicide— first-degree murder—felony murder—malice, premeditation, and deliberation—alternate basis**

Although defendant contends the trial court erred in a first-degree murder case by denying defendant's request for a jury instruction on continuous transaction with regard to the underlying felony of arson, the merits of this argument are not reached because: (1) defendant was found guilty under the felony murder rule as well as on the basis of malice, premeditation, and deliberation; and (2) even if the Court of Appeals found reversible error as to issues related to the felony murder rule, the conviction would still stand on the basis of malice, premeditation, and deliberation since defendant made no argument on this basis.

Appeal by defendant from judgment entered 9 November 2007 by Judge Kenneth C. Titus in Wake County Superior Court. Heard in the Court of Appeals 19 November 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

PER CURIAM.

On 9 November 2007 James Edward Brewington, Jr. ("defendant") was convicted of one count of first degree murder under the

first degree felony murder rule (with arson being the underlying felony) and on the basis of malice, premeditation, and deliberation. Judge Kenneth Titus sentenced defendant to life imprisonment without parole. Defendant appeals.

At trial, the evidence tended to show that defendant resided with the victim, James Baggett ("Baggett"), at Baggett's Holly Springs home in early 2007. There was differing testimony as to why defendant moved out of Baggett's home and what transpired the evening Baggett was killed.

Defendant testified that he moved out of the residence on or about 4 February 2007 and that he and Baggett were on amicable terms at that time. Another witness, Helen McDonald ("Ms. McDonald"), testified that defendant stole money from Baggett, which led to a conflict between the two and was the reason for defendant's subsequent move. Defendant testified that Ms. McDonald was the one who stole the money from Baggett.

Defendant testified that on the night of the murder, 10 February 2007,[1] defendant went to the home of John Morris ("Mr. Morris") where he smoked crack cocaine with several other people. Defendant stated that Ms. McDonald was also present at Mr. Morris's house and that she sought to instigate an argument between defendant and Baggett, who was not present, by saying she heard defendant was thrown out of Baggett's house over the "money situation" and Baggett caused defendant to lose his job.

Defendant testified that when the group ran out of beer and cigarettes, he and Ms. McDonald went to buy some more and while they were walking to the store, they saw Baggett drive up to his home. Defendant suggested they go to Baggett's house because he wanted to make sure there was no animosity between him and Baggett. According to defendant, he and Ms. McDonald entered Baggett's home and found him sitting on the sofa drinking beer. Baggett offered defendant a beer, which he accepted. During the course of the conversation between Baggett and defendant, an argument ensued in which Baggett called defendant a "crack whore." Defendant said that during the conversation, Baggett was repeatedly opening and closing a pocket knife. At some point, Baggett got up from the couch, approached defendant, and attempted to strike him. Having missed on his first attempt, Baggett swung again, hitting defendant on the chin. Defendant stated that as he was backing up he saw a piece of

---

1. Baggett was murdered after midnight on 11 February 2007.

wood, which was likely intended to fuel the wood heater. He picked up the wood, hit Baggett in the chest, and then again in the face.

According to defendant, Ms. McDonald was in the back room during the altercation and did not witness the event. After Baggett fell, Ms. McDonald ran into the room saying she heard the two men arguing. Ms. McDonald saw Baggett on the floor and ran out of the house. Defendant followed her, saying that she "egged it on." The two proceeded to buy beer and cigarettes at the nearby Harris Teeter. On the way back to Mr. Morris's house, defendant and Ms. McDonald encountered the individual who sold defendant the crack cocaine he had smoked earlier in the evening. Defendant purchased more cocaine and he and Ms. McDonald returned to Mr. Morris's house where they consumed the drugs. Defendant stated that he and Ms. McDonald were at Mr. Morris's house for an unspecified amount of time when he determined that they should return to Baggett's house to check on him. Defendant testified that when they got to Baggett's house, Ms. McDonald waited in the carport while he went inside. Defendant stated that he believed Baggett to be dead since he was in the same position as when defendant left after striking him. Defendant stated that he panicked and poured what he believed to be fluid used to ignite a wood stove onto a "throw," lit it, and threw it on the floor. He then left and went back to Mr. Morris's where he continued to smoke and drink. Defendant then went back to his hotel room. He was later arrested and confessed to police that he killed Baggett and burned the residence.

Ms. McDonald testified that on the night of the murder defendant told her that he was going to "f— [Baggett] up" because he was "put out" of Baggett's house and defendant blamed him for the fact defendant was fired from his job. Defendant said that if Baggett wanted to play with fire, he was going to get burned. Defendant made these statements when she saw him outside of a local gas station earlier in the evening on the night Baggett was killed.

Ms. McDonald testified that defendant made similar statements later in the night at Mr. Morris's house, where she was smoking crack cocaine and drinking beer. She claimed that she told defendant on multiple occasions to "squash it and leave it alone." Defendant then left, saying he was "going to f— this guy up[.]" Ms. McDonald testified that defendant was gone for an hour and a half to two hours. She claimed that she did not go with defendant to Baggett's house; she remained at Mr. Morris's. When defendant returned, he told the group that he hit Baggett in the head with a crowbar and that they should

hear sirens soon. Ms. McDonald heard sirens approximately twenty-five minutes later. She became upset and a man named "Kevin" asked defendant to leave. Defendant left and Ms. McDonald did not see him again that night.

The evidence showed that there was a crowbar in the room near Baggett's charred body. Baggett's cause of death was blunt force trauma to the skull, which, according to the medical examiner, could have been caused by either a crowbar or a piece of wood. The medical examiner testified that Baggett did not have soot in his lungs, which likely meant that he was dead before the fire was set. The medical examiner further testified that without treatment, Baggett would have died within ten minutes of the skull fracture.

We first point out that defendant did not bring forth in his brief certain assignments of error listed in the record on appeal. "Assignments of error listed in the record but not argued in defendant's brief are deemed abandoned." *Wirth v. Wirth*, 193 N.C. App. 657, 670, 668 S.E.2d 603, —— (2008) (citing N.C.R. App. P. 28(b)(6).

Defendant argues on appeal that the trial court erred in denying his request for a jury instruction on continuous transaction with regard to felony murder. Defendant further argues that the trial court erred in denying defendant's motion to dismiss the charge of felony murder due to insufficiency of the evidence. Specifically, defendant contends that the evidence was insufficient to show that he committed the underlying felony of arson while Baggett was alive.

We have carefully reviewed defendant's claims, and though we do not find that the trial court erred, we need not reach the merits of defendant's appeal. Defendant was found guilty of first degree murder under the first degree felony murder rule as well as on the basis of malice, premeditation, and deliberation. Both of defendant's arguments concern the charge of felony murder and do not assign error to any aspect of the trial with regard to first degree murder on the basis of malice, premeditation, and deliberation.

Even if this Court found reversible error as to issues related to the felony murder rule, the conviction would still stand because the jury also found that defendant murdered Baggett with malice, premeditation, and deliberation. In *State v. McLemore*, 343 N.C. 240, 470 S.E.2d 2 (1996), our Supreme Court found that the defendant should not have been convicted of felony murder, but held that the verdict of first degree murder could not be disturbed because the evidence supported a conviction based on premeditation and deliberation. *Id.* at

249, 470 S.E.2d at 7 (citing *State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989) (finding, "[p]remeditation and deliberation is a theory by which one may be convicted of first degree murder; felony murder is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes")).

Unlike in *McLemore*, we need not determine any issue regarding the first degree murder conviction based on malice, premeditation, and deliberation since defendant makes no argument as to this conviction. Thus, the conviction for first degree murder based on malice, premeditation, and deliberation stands, and defendant's remaining arguments with regard to the first degree murder conviction based on felony murder are moot.

Dismissed.

Panel Consisting of Judges HUNTER, ROBERT C., ELMORE and JACKSON.