STATE OF NORTH CAROLINA v. JAMES JUNIOR BLUE

No. COA09-1717

(Filed 5 October 2010)

## 1. Homicide— first-degree murder—motion to dismiss–sufficiency of evidence—premeditation and deliberation

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder. The State offered evidence, through defendant's own statement, that he formed the intent to kill his grandmother and contemplated whether he would be caught before he began the attack. Although there was evidence presented that defendant had consumed alcohol and cocaine prior to his assault on the victim, the evidence did not establish that his intoxication was such as to negate the possibility of premeditation and deliberation as a matter of law.

## 2. Robbery— dangerous weapon—motion to dismiss—sufficiency of evidence—continuous transaction

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon. There was no evidence that defendant had his grandmother's permission to take money from her wallet. The evidence was sufficient to show the theft and the use of force were part of a continuous transaction. The rape of the victim did not constitute a break in the chain of events. Further, the elements of the use of force by a dangerous weapon endangering the victim's life were established by independent evidence corroborating defendant's confession.

## 3. Rape— first-degree rape—second-degree rape—motion to dismiss—sufficiency of evidence—penetration

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree rape and the lesser-included offense of second-degree rape. There was sufficient independent physical evidence establishing the trustworthiness of defendant's statement that he had sex with his grandmother, thus satisfying the element of penetration.

**4. Constitutional Law— right to confrontation—testimony about autopsy findings—participation by testifying doctor**

Even assuming *arguendo* that defendant preserved his constitutional objection to a doctor giving his opinion on the cause of death based on an autopsy and findings by another doctor, defendant's argument failed because the testifying doctor also participated in the autopsy.

**5. Indictment and Information— short-form indictments–constitutionality—first-degree murder—first-degree rape**

Short form indictments were sufficient to charge a defendant with first-degree murder and first-degree rape.

Appeal by defendant from judgments entered 17 December 2008 by Judge Ola M. Lewis in Robeson County Superior Court. Heard in the Court of Appeals 17 August 2010.

*Roy Cooper, Attorney General, by Robert C. Montgomery, Special Deputy Attorney General, and John G. Barnwell, Assistant Attorney General, for the State.*

William D. Spence, for defendant–appellant.

MARTIN, Chief Judge.

Defendant was indicted for first degree rape, robbery with a dangerous weapon, and first degree murder. He entered pleas of not guilty. Following a trial, a jury found defendant guilty of second degree rape, robbery with a dangerous weapon, and first degree murder. He appeals from the judgments entered upon the verdicts. After careful consideration of the arguments presented on appeal, we conclude defendant received a fair trial, free from prejudicial error.

The evidence at defendant's trial tended to show that the defendant lived with his mother, Gail Blue Bullard, his step-father, James Bullard, and his twelve-year-old daughter in Maxton, North Carolina. The first week of November 2005, James Bullard became ill and required hospitalization. In order that she might attend to her husband in the hospital, Gail Bullard arranged for her mother, Shirley Locklear, to come to her home to care for defendant's daughter. On the following Saturday, 5 November, Mrs. Locklear's daughter, Flora May Hunt, went to the Bullard home to take Mrs. Locklear supper and took defendant's daughter home with her to spend Saturday night.

Before leaving, Ms. Hunt arranged for Mrs. Locklear to call her the next morning and go to church.

On Sunday, 6 November, Mrs. Locklear did not call Ms. Hunt, nor did she go to church. That afternoon, Ms. Hunt went to the Bullard home to check on Mrs. Locklear. Defendant was at the home, but Mrs. Locklear was not there. Defendant told Ms. Hunt that Mrs. Locklear's sister, "Aunt Otis", had come by and that Mrs. Locklear had gone with her. Ms. Hunt checked with "Aunt Otis" and learned that Mrs. Locklear was not with her. When Ms. Hunt questioned defendant further about his grandmother's whereabouts, he became upset and left in his mother's Mustang automobile.

Ms. Hunt notified other family members that Mrs. Locklear was not at the Bullard home. Family members searched the area around the house but were unable to locate Mrs. Locklear. The Robeson County Sheriff's Department was notified that Mrs. Locklear was missing. Officers were sent to the Bullard home and took a report. They were called back to the home early on the morning of 7 November when it was reported that a rug was missing from the kitchen area of the residence. At that point, they found some blood spatters in the kitchen and a broken ceiling fan blade.

Jeffrey Blue, Mrs. Locklear's son and defendant's uncle, saw defendant driving the Mustang in the early morning hours of 7 November and began following him. Defendant accelerated and began swerving as Jeffrey Blue followed him into Hoke County. Jeffrey Blue called 911. He followed defendant onto a dirt road, where defendant drove the Mustang into a ditch, got out of the car, and began running. Jeffrey Blue chased defendant, tackled him, and restrained him until Robeson County Deputy Sheriff Bass arrived and placed defendant in handcuffs. Jeffrey Blue asked defendant if Mrs. Locklear was alive and defendant answered "no."

Defendant was taken by Deputy Bass to a convenience store in Maxton where they were met by Detectives Randy McGirt and Ricky Britt. The detectives read defendant his *Miranda* rights, and defendant agreed to talk with them and to show them where Mrs. Locklear's body was located. Defendant told Detective Britt that he had a drug problem and that he had taken $200 from his grandmother. Defendant led the officers and Jeffrey Blue to a dirt logging road where they found a body wrapped in a green and white rug and a blue tarp, tied with wire. Defendant told the officers that the body was that of his grandmother, Mrs. Locklear, and that he had beaten her with a piece

of wood and a pot and choked her with a cord. He also told the officers that he had sex with Mrs. Locklear before he killed her.

Defendant was taken to the Robeson County Sheriff's Department, where he was interviewed by Detective Britt and SBI Special Agent Trent Bullard. He was cooperative, reviewed the written statement which the officers had prepared from the interview, made some changes, and then signed the statement. In his statement, he said that he had consumed·crack cocaine and alcohol, and that after Flora Hunt had left the house with his daughter, he "just stood around trying to find a way to get some more money so [he] could get some more cocaine." He described how he got a piece of wood from the porch and went into the house. Defendant stated:

> Nobody was there but grandmother. After I got inside she was sitting in a chair in the living room. I walked in my bedroom and I just stood there. I just stood there about 15 minutes, and I was thinking. I was thinking was it worth killing Grandmother and could I get away with it. I didn't want to ask Grandmother for the money because she would have known it was for dope. I believe if I would have asked her that she would have given me some money.

He then described how, while his grandmother was still sitting in her chair, he hit her on the head with the piece of wood. She stood up, and he hit her again. The second time he hit her, the wood broke. They began to struggle, and defendant began to beat her on the head with a cooking pot. Defendant hit her with the pot "about seven times" and kicked her twice. While beating her with the pot, defendant broke a blade off the ceiling fan. He said that while his grandmother was still alive and telling him to stop, he pulled her nightgown over her face, had sex with her, and ejaculated inside of her.

Defendant said that he then went to the bathroom to clean up. When he returned, his grandmother was still making noises in the kitchen. Defendant cut the cord off a recording machine and wrapped it around her neck, and put tape over her nose and mouth.

Defendant said that he searched for, and found, his grandmother's wallet and took money out of it. After cleaning up some blood, defendant left the house and went to buy cocaine and beer. Returning home, defendant smoked some of the cocaine, and then got a blue tarp, Clorox, and rags to do more cleaning. He rolled up Mrs. Locklear's body in the tarp, tied it with wire, and loaded it into a cart, which he towed with his mother's car to the ditch where it was

later found. Deputy Bruce Meares, a crime scene investigator with the Robeson County Sheriff's Department, testified that when he unwrapped the tarp from Mrs. Locklear's body, there was a strong odor of Clorox. Deputy Meares also went to the Bullard residence where he collected samples of blood stains, a pot, a tape recorder with the cord cut off, and various other items. Defendant consented to providing hair and saliva samples.

North Carolina Chief Medical Examiner Dr. John Butts participated in an autopsy of Mrs. Locklear's body on 8 November 2005. Dr. Butts testified that there were multiple fractures to Mrs. Locklear's skull, injury to her underlying brain, multiple fractured ribs, and a fracture to her backbone. Dr. Butts also testified that there was a tear and bruising in the opening of Mrs. Locklear's vagina. Dr. Butts further testified that pressure had been applied to her throat and that there was a ligature mark around Mrs. Locklear's neck which was consistent with the electrical cord found with her body. Dr. Butts opined that Mrs. Locklear died "as a result of multiple blows to the head fracturing the skull, but she also had evidence of ligature strangulation." Vaginal and rectal smears taken during the autopsy revealed the presence of spermatozoa and a forensic DNA analyst with the SBI testified that defendant could not be excluded as a contributor to the DNA profile obtained from the sperm fraction of the vaginal swabs taken from the victim.

Defendant did not testify, but offered evidence through the testimony of Floyd Freeman, Jr. that he had bought cocaine from Freeman three times on 5 November 2005. Freeman testified that when he sold defendant cocaine for the third time, around 11:30 p.m., that he told defendant he should not be driving because he had been drinking. On cross-examination, Freeman testified that defenant was understandable, but slurring, was not having any problems driving, and had no trouble counting his money.

## I.

On appeal, defendant challenges the sufficiency of the State's evidence to submit to the jury the charges of first degree murder, robbery with a dangerous weapon, and rape, and contends the trial court erred by denying his motions to dismiss those charges. In reviewing these arguments, our review is limited to determining " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is

properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* at 378-79, 526 S.E.2d at 455 (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)). "Further, '[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration.' " *State v. Hood*, 332 N.C. 611, 621, 422 S.E.2d 679, 685 (1992) (quoting *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971)), *cert. denied*, 507 U.S. 1055, 123 L. Ed. 2d 659 (1993).

A.

**[1]** Defendant first argues that the trial court erred in denying his motion to dismiss the charge of first degree murder. Defendant contends that the evidence presented by the State was insufficient to establish that he killed Mrs. Locklear with premeditation and deliberation or that he killed her in the perpetration of robbery with a dangerous weapon.

i.

With respect to the charge of first degree murder with premeditation and deliberation, defendant argues that the relationship between him and Mrs. Locklear shows that he did not act in a "cool state of blood" and that any purpose to kill her "was formed and immediately executed in a passion" caused by impairment due to his consumption of alcohol and crack cocaine. Thus, he argues, without citing any precedent, that he could not have formed the specific intent to kill Mrs. Locklear. His argument is wholly without merit.

In *State v. Chapman*, 359 N.C. 328, 611 S.E.2d 794 (2005), our Supreme Court explained premeditation and deliberation in the context of first degree murder.

> " 'Premeditation means that [the] defendant formed the specific intent to kill the victim for some length of time, however short, before the actual killing.' " " 'Deliberation' means that the defendant formed the intent to kill in a cool state of blood and not as a result of a violent passion due to sufficient provocation.' " "Specific intent to kill is an essential element of first degree murder, but it is also a necessary constituent of the elements of premeditation and deliberation." "Thus, proof of premeditation and deliberation is also proof of intent to kill."

*Id.* at 374, 611 S.E.2d at 827 (citations omitted) (quoting *State v. Cagle*, 346 N.C. 497, 508, 488 S.E.2d 535, 543 (1997) (alteration in original); *State v. Truesdale*, 340 N.C. 229, 234, 456 S.E.2d 299, 302 (1995); *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 838-39 (1981)). " 'If the design to kill was formed with deliberation and premeditation, it is immaterial that defendant was in a passion or excited when the design was carried into effect.' " *State v. Misenheimer*, 304 N.C. 108, 113-14, 282 S.E.2d 791, 795 (1981) (quoting *State v. Faust*, 254 N.C. 101, 108, 118 S.E.2d 769, 773, *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961)).

In the present case, the State offered evidence, through defendant's own statement, that he formed the intent to kill Mrs. Locklear, and contemplated whether he would be caught, before he began the attack. This evidence is sufficient to demonstrate that defendant formed the intent to kill in a cool state of blood. *See Hood*, 332 N.C. at 622, 422 S.E.2d at 685 (holding that there was no error in denying defendant's motion to dismiss when evidence showed that victim did not provoke defendant and defendant had ample time to deliberate the killing).

As for defendant's contention that he was incapable, as a matter of law, of forming the specific intent to kill Mrs. Locklear due to his alcohol and crack cocaine induced intoxication, our Supreme Court, in considering an argument similar to that advanced by defendant, has stated:

> [d]efendants have cited no case, and our research has revealed none, in which any court has dismissed a charge of murder in the first degree on the ground that all the evidence tended to show a degree of intoxication which negated the possibility of premeditation and deliberation as a matter of law. On the contrary, when a defendant has committed an overt lethal act, the decision has been that whether his 'intoxication (was) so gross as to preclude a capacity intentionally to kill is normally a fact issue for the jury to resolve.' . . . 'As a general rule, it is for the jury to determine whether the mental condition of [the] accused was so far affected by intoxication that he was unable to form a guilty intent, unless the evidence is not sufficient to warrant the submission of the question to the jury.'

*State v. Hamby*, 276 N.C. 674, 679, 174 S.E.2d 385, 388 (1970) (citing *King v. State*, 392 P.2d 310, 311 (Nev. 1964); 23A C.J.S. Criminal Law § 1131 (1961); *State v. Marsh*, 234 N.C. 101, 66 S.E.2d 684 (1951); *State v. Hammonds*, 216 N.C. 167, 3 S.E.2d 439 (1939)), *death sen-*

*tence vacated*, 408 U.S. 937, 33 L. Ed. 2d 754 (1972). Our research reveals that the rule recited in *Hamby* is still good law. Although there was evidence presented in the State's case in chief that defendant had consumed alcohol and cocaine prior to his vicious assault on Mrs. Locklear, that evidence did not establish that his intoxication was such as to negate the possibility of premeditation and deliberation as a matter of law. Contrary to defendant's assertion, evidence that his drug dealer believed he was too impaired to drive does not show he was incapable of forming the intent to kill. *See State v. Bunn*, 283 N.C. 444, 460, 196 S.E.2d 777, 788 (1973) (recognizing that one may be sufficiently intoxicated to be guilty of driving while impaired "and yet be quite capable of forming and carrying out a specific intent to kill."). Moreover, defendant's conduct subsequent to the killing belies his assertion of incapacitating intoxication. *See State v. Hunt*, 345 N.C. 720, 728, 483 S.E.2d 417, 422 (1997) (dismissing defendant's argument that he was too intoxicated to form the specific intent to kill when he acted rationally in disposing of the victim's body and cleaning himself and the scene, and, in a later statement to police, he was able to recall how he had stabbed the victim and disposed of the body).

ii.

Because we hold that there was sufficient evidence to overcome defendant's motion to dismiss the charge of first degree murder based on premeditation and deliberation, we need not address his argument regarding the alternate theory of felony murder. *See State v. Britt*, 132 N.C. App. 173, 178, 510 S.E.2d 683, 687 ("We need not reach defendant's argument regarding the felony murder rule, because defendant's conviction predicated on the theory of murder with premeditation and deliberation was without error."), *disc. review denied*, 350 N.C. 838, 538 S.E.2d 571 (1999).

B.

[2] Defendant next contends the trial court erred in denying his motion to dismiss the charge of robbery with a dangerous weapon. Defendant contends first that the State failed to present sufficient evidence that the theft and the use of force were part of a continuous transaction, and second that there was a lack of corroborating evidence to support the submission of the robbery charge based on the *corpus delicti* rule.

Robbery with a dangerous weapon, a statutory crime pursuant to N.C. Gen. Stat. 14-87 (2009), is defined as: "(1) the unlawful taking or an attempt to take personal property from the person or in the pres-

**STATE v. BLUE**

[207 N.C. App. 267 (2010)]

ence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991) (citing *State v. Beaty*, 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982)). "The gist of the offense is not the taking but the taking by force or putting in fear." *Powell*, 299 N.C. at 102, 261 S.E.2d at 119 (citing *State v. Swaney*, 277 N.C. 602, 611, 178 S.E.2d 399, 405, *appeal dismissed, cert. denied*, 402 U.S. 1006, 29 L. Ed. 2d 428 (1971)). "Furthermore, it is immaterial whether the intent was formed before or after force was used upon the victim, provided that the theft and force are aspects of a single transaction." *State v. Faison*, 330 N.C. 347, 359, 411 S.E.2d 143, 150 (1991).

Defendant relies on *Powell* and *State v. McLemore*, 343 N.C. 240, 470 S.E.2d 2 (1996), to support his contention that there was insufficient evidence that the theft and the use of force were part of a continuous transaction. In *Powell*, the defendant was found guilty of first degree murder, first degree rape, and robbery with a dangerous weapon. *Powell*, 299 N.C. at 96, 261 S.E.2d at 115. Our Supreme Court held that the trial court erred in submitting the robbery charge to the jury when the "arrangement of the victim's body and the physical evidence indicate she was murdered during an act of rape," and the evidence showed that defendant stole her television and vehicle as an afterthought. *Id.* at 102, 261 S.E.2d at 119. The Court therefore reversed Powell's conviction for robbery with a dangerous weapon. *Id.* In *McLemore*, the defendant was convicted of, among other things, first degree murder and robbery with a dangerous weapon. *McLemore*, 343 N.C. at 243-44, 470 S.E.2d at 3-4. Our Supreme Court held that the trial court erred in denying McLemore's motion to dismiss the charge of armed robbery when the evidence "was insufficient to show that the defendant used a weapon to force the victim to give him her car." *Id.* at 244, 470 S.E.2d at 4. Rather, the evidence showed that "the defendant had permission to use the car and had often done so in the past[.]" *Id.* at 245, 470 S.E.2d at 4. The Court concluded that there was "no evidence that the taking of the Cadillac was part of a single continuous transaction that involved the use of a firearm." *Id.*

Citing those cases, defendant contends the evidence in the present case does not show a series of events constituting one continuous transaction. Defendant maintains, instead, that there were "three separate, horrible, isolated crimes explainable only by cocaine and alcohol." In any event, he asserts the rape constitutes a break in the chain of events leading from what he describes, without explanation, as the "initial

felony", to the act causing death. He attempts to analogize this case to *Powell*, and asserts that "[t]his appeal is the same as *McLemore*."

Unlike *McLemore*, however, there is no evidence in the present case that defendant had his grandmother's permission to take the money from her wallet. While he stated in his confession that he knew his grandmother would have given him money if he had asked her for it, that is a very different thing from having permission to take the money without asking. And, unlike *Powell*, there is evidence here that defendant formed the intent to rob his grandmother before he began his attack. Indeed, defendant told the officers that "I didn't want to ask Grandmother for the money because she would have known it was for dope."

Having formed this intent, defendant attacked his grandmother with a piece of wood and a cooking pot, before strangling her with an electrical cord and taping her mouth. He then found her wallet and took her money. This evidence is sufficient to show the theft and the use of force were part of a continuous transaction. *See State v. Fields*, 315 N.C. 191, 203, 337 S.E.2d 518, 525 (1985) (holding there was sufficient evidence of continuous transaction where defendant took shotgun from the body of fallen victim he had shot); *State v. Stitt*, —— N.C. App. ——, ——, 689 S.E.2d 539, 552 (2009) (holding there was sufficient evidence of continuous transaction when defendant killed the victims and then took their property, "not as a mere after-thought, but with the intent of utilizing the vehicle and cellular telephones, and selling other personal property"), *disc. review denied*, 364 N.C. 246, —— S.E.2d —— (2010).

Furthermore, to accept defendant's contention that rape constituted a break in the chain of events sufficient to interrupt an otherwise continuous transaction would compel the perverse result that one could insulate a theft from the force by which it was accomplished by means of committing the additional atrocity of rape. Our Supreme Court has rejected an analogous argument where a defendant contended that the killing of a robbery victim should preclude conviction for armed robbery where the property was taken after the fatal wound was inflicted based upon the proposition that a corpse is incapable of possessing property. *See Fields*, 315 N.C. at 201-02, 337 S.E.2d at 524-25. We decline to allow a defendant to use one heinous crime to shield himself from criminal liability for another.

Defendant also argues that the State failed to present sufficient evidence from which the jury could reasonably conclude that he com-

mitted robbery with a dangerous weapon because the only evidence of that crime was provided by his confession to the officers. Under the *corpus delicti* rule, the State may not rely solely on the extrajudicial confession of a defendant, but must produce substantial independent corroborative evidence that supports the facts underlying the confession. *State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985). Defendant argues that the State failed to produce substantial independent corroborative evidence to show that the crime of armed robbery actually occurred.

In *Parker*, the defendant was convicted of two counts of first degree murder and two counts of armed robbery. *Id.* at 224, 337 S.E.2d at 488. On appeal, he argued "there was no evidence of the *corpus delicti* of that armed robbery." *Id.* at 227, 337 S.E.2d at 490. Our Supreme Court adopted the rule that

> in non-capital cases . . . when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.

*Id.* at 236, 337 S.E.2d at 495. The Court proceeded to apply the rule, noting that "[t]he *corpus delicti* of the murders was proven by evidence independent of the defendant's confession." *Id.* When evaluating the *corpus delicti* of the armed robbery in *Parker*, the Court held:

> that under the particular facts presented in this case, where the defendant was charged with multiple crimes; the *corpus delicti* as to the more serious offenses was established independently of the defendant's confession; an element of the crime, use of a deadly weapon, was also established by independent evidence; and the State's evidence closely paralleled the defendant's statements as to the manner in which he committed the offenses, there was sufficient corroborative evidence to bolster the truthfulness of the defendant's confession and to sustain a conviction as to the . . . armed robbery even though there was no independent evidence tending to prove the *corpus delicti* of that crime.

*Id.* at 238-39, 337 S.E.2d at 496-97.

Defendant does not contest the sufficiency of the State's evidence to corroborate his confession as to the murder of Mrs. Locklear;

indeed, in all relevant particulars, the State's evidence supports the sequence of events as narrated by defendant. The same evidence corroborates the defendant's confession with respect to the elements of robbery with a dangerous weapon. Defendant stated that he struck Mrs. Locklear multiple times on the head with a piece of wood and a pot; those items were recovered from the scene of the crime and the medical examiner opined that Mrs. Locklear died as a result of multiple blows to the head. Defendant stated that he strangled his grandmother with an electrical cord; the medical examiner testified that her body exhibited evidence of ligature strangulation and deputies testified that the cord was found with the victim's body. Defendant described to the officers how he cleaned with Clorox and wrapped the victim's body in a blue tarp; the State's evidence showed that her body was found wrapped in a blue tarp and had a strong odor of Clorox. Finally, defendant's own witness testified that defendant used cash to purchase cocaine on the night of the homicide, corroborating defendant's confession that he had taken Mrs. Locklear's cash from her wallet. Thus, the elements of the use of force by a dangerous weapon endangering the victims's life were established by independent evidence corroborating defendant's confession.

On the basis of *Parker*, we hold that this evidence was sufficiently corroborative to bolster the trustworthiness of the defendant's confession and to sustain his conviction of armed robbery. *See State v. Ash*, 193 N.C. App. 569, 575, 668 S.E.2d 65, 70 (2008) (holding that defendant's confession to homicide and robbery was corroborated by ballistics evidence recovered from the scene of the killing, and evidence "that defendant hid in hotel rooms, which were paid with cash and reserved in his mother's name."), *disc. review denied*, 363 N.C. 130, 673 S.E.2d 363 (2009).

C.

[3] On similar grounds, defendant contends the trial court erred in denying his motion to dismiss the charge of first degree rape and the lesser included offense of second degree rape because the State failed to satisfy the *corpus delicti* rule by offering sufficient independent evidence to corroborate defendant's statement that he "had sex with [the victim] . . . [and] shot off in her" so as to establish the necessary element of penetration.

One of the elements of rape is the penetration, however slight, of the sexual organ of the female by the sexual organ of the male. *State v. Johnson*, 317 N.C. 417, 433-35, 347 S.E.2d 7, 17-18 (1986) (construing

N.C. Gen. Stat. § 14-27.2, defining first degree rape), *superseded by statute on other grounds as stated by State v. Moore*, 335 N.C. 567, 594, 440 S.E.2d 797, 812-13, *cert. denied*, 513 U.S. 898, 130 L. Ed. 2d 174 (1994).

Our State Supreme Court in *State v. Johnson*, 317 N.C. 343, 346 S.E.2d 596 (1986), addressed a similar appeal where a defendant argued that the trial court erred in refusing to dismiss the charge of rape because the State failed to establish the *corpus delicti* of the crime. *Id.* at 372, 346 S.E.2d at 612. Our Supreme Court disagreed:

> With regard to the first-degree rape charge, in addition to the stab wounds there was a bruise on the victim's face and bite marks over her left breast and thigh. The pattern of bloodstains in the car suggest that she was dragged out of it. Her clothes were found pulled and torn in a fashion which left her body exposed from her neck to her ankles. The small amount of semen found in her vagina was consistent with defendant's statement that he penetrated [the victim] but did not complete ejaculation. The fact that defendant possessed a knife with traces of blood on it which could have produced the stab wounds corroborates his admission that the knife was the one he used to stab [the victim]. We hold that there was sufficient extrinsic evidence admitted at trial to support the jury's findings that the . . . rape occurred in the instant case.

*Id.* at 373-74, 346 S.E.2d at 613.

In the present case, the State's evidence showed that the victim's body was found partially nude. An autopsy revealed a small tear at the base of the opening of her vagina and areas of bruising and scraping on the surface of the skin inside her vagina. Examination of the rape kit samples from the victim's vagina and rectum showed the presence of spermatazoa. A forensic analysis showed that defendant could not be excluded as a contributor of the weaker DNA profile from the sperm fraction of the vaginal swabs taken from the victim. As in *Johnson*, this is substantial independent evidence tending to establish the trustworthiness of defendant's statement that he had sex with his grandmother and "shot off in her," satisfying the element of penetration.

Based on the foregoing, we hold that the trial court did not err in denying defendant's motions to dismiss each of the charges against him at the close of all of the evidence.

II.

[4] Defendant also contends the trial court erred in permitting Dr. Butts to testify, describe the autopsy and its findings, and give his opinion as to the cause of death. Defendant argues that Dr. Trobbiana, rather than Dr. Butts, personally performed the autopsy, and, therefore Dr. Butts' testimony was inadmissible hearsay and deprived him of his right to confrontation under the State and Federal Constitutions. The State responds that defendant has not preserved his challenge to Dr. Butts' testimony.

Hearsay is defined by statute as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2009). The Sixth Amendment to the United States Constitution provides in part that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (citing *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004); *State v. Lewis*, 361 N.C. 541, 545, 648 S.E.2d 824, 827 (2007)), *clarification denied*, 363 N.C. 660, 684 S.E.2d 439 (2009). In *Locklear*, our Supreme Court held that the trial court violated the defendant's rights in admitting "forensic analyses performed by a forensic pathologist and a forensic dentist who did not testify." *Id.* at 452, 681 S.E.2d at 305.

We need not determine whether defendant has properly preserved his constitutional objection because, even assuming *arguendo* that he has, his argument still fails.

As defendant acknowledges, Dr. Butts testified that he participated in the autopsy examination. He testified as follows:

Q: Dr. Butts, did you participate in an autopsy examination on November the 8th of 2005 of the body of Shirley Blue Locklear?

A: Yes, sir.

Q: Who else participated in that autopsy examination?

A: Well, there were two other individuals, one was an assistant working in the office, Mr. Garrity, and the third person was Dr. Trobbiani who was our forensic pathology fellow at that time.

STATE v. BLUE

[207 N.C. App. 267 (2010)]

Dr. Butts' participation in the autopsy is furthered evidenced by the fact that he, along with Dr. Trobbiani, signed the autopsy report. It is evident from his testimony that Dr. Butts was testifying as to his own observations and providing information rationally based on his own perceptions. Indeed, defendant points us to no portion of Dr. Butts' testimony in which he sought to testify as to the declarations or findings of anyone other than himself. See Crawford, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197-98 n.9 (2004) ("The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Thus, we hold the trial court did not err in permitting Dr. Butts to testify as to the autopsy findings.

## III.

[5] Defendant's remaining arguments are directed at the sufficiency of the bills of indictment for first degree murder and first degree rape. He contends both indictments, commonly referred to as "short-form indictments," violated his rights under the State and Federal constitutions since they failed to allege all of the elements of those offenses. As he readily acknowledges, the issue of the sufficiency of these short-form indictments has been repeatedly decided against him. See State v. Allen, 360 N.C. 297, 316-17, 626 S.E.2d 271, 286 (short-form indictment for first degree murder), cert. denied, 549 U.S. 867, 166 L. Ed. 2d 116 (2006); State v. Wallace, 351 N.C. 481, 508, 528 S.E.2d 326, 343 (short-form indictment for first degree murder, first degree rape and first degree sexual offense) cert. denied, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), reh'g denied, 531 U.S. 1120, 148 L. Ed. 2d 784 (2001). Insofar as defendant requests this Court to "re-examine this issue and its prior adverse rulings," we remind defendant that we are bound by the precedent of the North Carolina Supreme Court. State v. Gillis, 158 N.C. App. 48, 53, 580 S.E.2d 32, 36, disc. review denied, 357 N.C. 508, 587 S.E.2d 887 (2003).

No error.

Judges HUNTER and CALABRIA concur.